**In re The Marriage of Michael K. KIZZIAH, Appellant–Petitioner,**

v.

**Angie C. KIZZIAH, Appellee–Respondent.**

**No. 71A03–9402–CV–60.**

Court of Appeals of Indiana, Third District.

May 31, 1995.

298

Robert J. Palmer, May Oberfell & Lorber, South Bend, for appellant.

Eugenia S. Schwartz, Nickle & Piasecki, South Bend, for appellee.

## OPINION

STATON, Judge.

Michael Kizziah appeals the denial of his motion to modify a dissolution decree which he entered into with his former wife Angie Kizziah. Michael raises one issue on appeal and Angie raises one issue on cross appeal; we restate these issues as follows:

I. Whether the trial court erred in determining that the parties' agreed maintenance provision was non-modifiable.

II. Whether the trial court erred in its calculation of maintenance arrearage.

We reverse and remand.

The facts most favorable to the judgment are as follows. Michael and Angie entered into a property settlement agreement ("Agreement") which provided for the division of marital assets, custody, child support, visitation, and alimony. The trial court approved the Agreement and incorporated it into a dissolution decree.

Michael agreed to pay Angie $606 monthly for alimony. The Agreement stated that this amount is "fixed until [Angie] remarries at which time [Michael's] obligation for payment of this support to [Angie] denominated as alimony will cease." Record, p. 45. Michael sought to modify the dissolution decree based upon a change in employment which he alleged makes the Agreement unreasonable. The trial court denied the petition holding the language of the Agreement precludes modification; Michael appeals.

### I.

*Maintenance Modification*

Michael argues that the trial court erred in holding that the monthly payments are not subject to judicial modification. He claims the Agreement is ambiguous on this point.

We first determine the nature of the monthly payments. The Agreement's denomination of the payments as "alimony"[1] does not determine their true nature. *DeVoe v. DeVoe* (1988), Ind.App., 531 N.E.2d 1200, 1202. As a matter of law, payments which terminate upon a change of circumstances, in this case marriage, cannot constitute a division of marital property. *Id.* Further, spousal support payments which are not a division of marital property are maintenance. *Id.* Michael and Angie agree the monthly payments are maintenance.

We next examine the Agreement. Indiana expressly encourages divorcing couples to reach agreements settling their affairs. I.C. § 31–1–11.5–10(a). Dissolution decrees entered into by agreement of the parties implicate contract principles. *Bowman v. Bowman* (1991), Ind.App., 567 N.E.2d 828, 831. This gives parties more flexibility in crafting dissolution decrees, and they may agree to provisions which a trial court could not order; e.g., non-modifiable maintenance payments. *Id.*

Acknowledging this, Michael argues that the language of the Agreement does not prohibit judicial modification. The parties' intent, as determined by the clear

---

1. We note that alimony, under that name, is no longer recognized in Indiana. I.C. § 31–1–11.5– 11; *Hicks v. Fielman* (1981), Ind.App., 421 N.E.2d 716, 722.

language of the contract, controls when interpreting an agreement. *In Re Marriage of Loeb* (1993), Ind.App., 614 N.E.2d 954, 957. If the contract language is unambiguous, construction of the agreement is a question of law for the court. *Id.*

In *Bowman,* this court held the following language sufficient to preclude judicial modification: "it being understood that [the maintenance] obligation shall not in any way be modified." *Bowman, supra,* at 829. This language clearly and unmistakably seeks to insulate the payments from judicial modification.

■ The language used in this Agreement, however, is less clear. The Agreement states that the maintenance "amount is fixed until the wife remarries." Record, p. 45. To say an amount is fixed is less clear regarding modification than to say the amount cannot be modified. "Fixed" might mean no more than the amount is unaffected by minor fluctuations in the payor spouse's income or payee spouse's need. The term does not unmistakably foreclose judicial modification.

Recently, this court held a maintenance agreement modifiable despite a general non-modification clause covering the agreement as a whole. *Voigt v. Voigt* (1994), Ind.App., 645 N.E.2d 627, *trans. pending.* The *Voigt* court held that the general clause did not "specifically and unambiguously preclude modification of maintenance provisions" as did the *Bowman* agreement. *Id,* at 630. We conclude that the language of this Agreement is more similar to the equivocal language of *Voigt* than the unmistakable language of *Bowman.*

Further, Indiana disfavors indefinite spousal maintenance payments. This is evidenced by the statutory prerequisite allowing a court to order maintenance only if the payee spouse is incapacitated, cannot support an incapacitated child, or needs job training for a brief time. I.C. § 31–1–11.5–11(e). Even under these circumstances, maintenance is not mandatory, *Rump v. Rump* (1988), Ind.App., 526 N.E.2d 1045, 1046, *trans. denied,* and is subject to judicial modification, *Bowman, supra.* In addition, public policy disfavors indefinitely locking parties into sum-certain maintenance payments regardless of possible misfortune which might befall the payor spouse and windfalls which might grace the payee spouse.

■ For these reasons, language foreclosing judicial modification of maintenance payments must be specific and unmistakable. This is not a novel principle of contract law. We routinely require specific, unmistakable language for other disfavored contract provisions.[2] This requirement is sound because litigants should not find themselves indefinitely locked into maintenance payments unless they clearly bargained for that arrangement.

We conclude that the Agreement does not specifically and unambiguously preclude judicial modification of maintenance payments. While non-modification language need not be identical to that in *Bowman,* it must unmistakably indicate an intent to insulate maintenance from judicial modification. On remand, Michael can present evidence in an attempt to demonstrate a substantial and continuing change of circumstance which makes the Agreement unreasonable.

## II.

### Calculation of Arrearage

■ On cross-appeal, Angie argues that the trial court erred in calculating maintenance arrearage.[3] The Agreement required

---

2. See *Bagko Development Co. v. Damitz* (1994), Ind.App., 640 N.E.2d 67, 70 (restrictive covenants on land use); *Fresh Cut, Inc. v. Fazli* (1994), Ind.App., 630 N.E.2d 575, 578, *trans. pending* (indemnity against one's own negligence); *Fumo v. Medical Group of Michigan City* (1992), Ind.App., 590 N.E.2d 1103, 1109, *trans. denied* (covenant not to compete); *George S. May Intern. Co. v. King* (1994), Ind.App., 629 N.E.2d 257, 263, *reh. denied* (limiting access to courts); I.C. § 26–1–2–316(2) (sales: exclusion or modifi-

cation of warranties); I.C. § 26–1–2–719(1)(b) (sales: limiting remedies).

3. Angie also argues that the trial court should have awarded her half the realtor commission reimbursement from the sale of the marital home. The trial court did not rule on this issue in its order or in its ruling on Michael's motion to correct error; so Angie cannot appeal it at this time. *Strutz v. McNagny* (1990), Ind.App., 558 N.E.2d 1103, 1109, *trans. denied.*

Michael to make payments on the first day of each month, beginning with the month after the parties sold the marital home.

The marital home was sold on April 30, 1992 and Michael, properly, made the first maintenance payment on May 1, 1992. Michael made the June and July payment, but none thereafter, putting him thirteen months in arrears at the time of the August 18, 1993 judgment.

The trial court fixed the maintenance arrearage at $7,272 (twelve months at $606 per month). However, as stated, Michael had missed thirteen payments, not twelve. Therefore, the total arrearage was $7,878 at that time. Michael does not dispute these calculations. We direct the trial court to modify the arrearage accordingly.

Reversed and remanded to the trial court for proceedings consistent with this opinion.

SULLIVAN, J., concurs and files separate concurring opinion.

HOFFMAN, J., concurs in part and dissents in part and files separate opinion.

SULLIVAN, Judge, concurring.

To the extent that the majority opinion may be read to hold that maintenance agreements between parties to a dissolution are disfavored in the law, I must respectfully disagree. I do, however, fully agree that if such maintenance arrangements are to be non-modifiable, that intention must be clearly and expressly set forth in the agreement itself.

In all other respects, I fully concur.

HOFFMAN, Judge, dissenting and concurring.

I dissent in part and concur in part. I dissent as to Issue I regarding the property settlement agreement (Agreement). The term "fixed" as used in the Agreement clearly imparts the intent of the parties that the amount of the periodic "alimony" not be modified. I cannot agree with the majority's opinion that the term "fixed might mean no more than the amount is unaffected by minor fluctuations in the payor spouse's income or payee spouse's need." "Fixed" has a clear and definite meaning:

> "1a: securely placed or fastened: not adjustable: permanently and definitely located: STATIONARY, IMMOVABLE...."

Webster's Third New International Dictionary (G & C Merriam Co.1976). The clear and unambiguous language of the contract requires that the specific amount of the "alimony" payments remain unchanged. To conclude otherwise is to rewrite the parties' contract.

Additionally, Michael, himself, stated that by using the specific term "fixed" within the Agreement it was his intent that the amount of the "alimony" payments never rise and that the amount could not be adjusted. As he explained, the amount of the payments was not based on his income; rather, the amount was based on what the parties had determined Angie's need to be. The trial court correctly determined that the parties' intent, as shown by the Agreement and supported by their testimony, was that the amount of the "alimony" payment be fixed and not subject to modification by the court. This Court is not at liberty to write the parties' contract.

I concur as to Issue II.