**Aimee Sue WALLIN, Appellant–Petitioner,**

**v.**

**Kevin Edward WALLIN, Appellee–Respondent.**

No. 04A03–9509–CV–319.

Court of Appeals of Indiana.

April 25, 1996.

Publication Ordered June 3, 1996.

Kenneth R. Watson, Williamsport, for Appellant.

Dennis L. Woods, Fowler, for Appellee.

## OPINION

GARRARD, Judge.

Aimee Sue Wallin appeals from an order modifying child custody in which the trial court transferred custody of her two minor children to her ex-husband Kevin Edward Wallin.

### FACTS

Aimee Wallin (hereinafter "Mother") and Kevin Wallin (hereinafter "Father") divorced on January 21, 1993. The parties had two minor children born during the marriage, Tiffany Renee Wallin, born July 5, 1991, and Nathaniel Brian Wallin, born January 18, 1993. The trial court awarded custody of both children to Mother and granted Father supervised visitation.

The trial court granted Father's petition for modification of visitation on September 30, 1994. The court ordered that Father have reasonable visitation on alternate weekends and several specified holidays. Although the first 90 days of Father's visitation was restricted to taking place at his mother's home, his visitation became unrestricted after this time period.

On June 7, 1995, Father filed his petition requesting modification of the court's previous custody order placing custody of Tiffany and Nathaniel with Mother. In support of his petition, Father alleged that Mother had not maintained a stable home for the children and had failed to provide for their physical and emotional needs. He further contended that it would be in the children's best interests for custody to be changed and established in him. After hearing evidence, the trial court granted Father's petition to modi-

fy custody and placed sole custody of the children with Father. The court also noted that Father was in arrears on child support in the sum of $6,158.00, but did not find him in contempt.[1] The court granted Mother reasonable visitation and ordered her to pay child support in the sum of $54.00 per week. This appeal ensued.

### ISSUE

The sole issue on appeal is whether the trial court's modification of custody constitutes an abuse of discretion.

### DISCUSSION & DECISION

Although Mother phrases her argument in four separate issues, essentially she challenges the trial court's determination to modify custody as being unsupported by evidence and an abuse of discretion. She claims that the changes in her residence and her cohabitation with two men over the past year did not result in any adverse effect upon the children. The parties did not request specific findings pursuant to Trial Rule 52(A); nor did the trial court enter findings sua sponte. Therefore, we will reverse the award of custody only if that determination is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences to be drawn therefrom. *Hegerfeld v. Hegerfeld*, 555 N.E.2d 853, 856 (Ind.Ct.App.1990).

Modification of a custody order is governed by Ind.Code § 31-1-11.5-22(d) (West Supp.1995). Prior to July 1, 1994, a trial court could modify a custody arrangement "only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." *Lamb v. Wenning*, 600 N.E.2d 96, 98 (Ind.1992) (citing earlier version of I.C. § 31-1-11.5-22(d)). Effective July 1, 1994, however, our legislature moved away from the long-standing, rather stringent standard by amending the statute to read as follows:

> (d) The court may not modify a child custody order unless:

---

1. Both Mother and Father had minimal income and received Aid For Dependent Children (AFDC).

(1) it is in the best interests of the child; and

(2) there is a substantial change in one (1) or more of the factors which the court may consider under [Ind.Code 31–1–11.5–21(a) ].

The amended statute also requires a trial court addressing custody modification to consider the factors listed under I.C. § 31–1–11.5–21(a), which requires a trial court entering a custody order to consider *all relevant factors,* including the following:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community; and

(6) the mental and physical health of all individuals involved.

(Emphasis added).

▉ On review of a child custody modification, we do not reweigh evidence or reassess witness credibility. Moreover, we consider only the evidence which supports the trial court's decision. *Doubiago v. McClarney,* 659 N.E.2d 1086, 1087–88 (Ind.Ct.App. 1995), *trans. denied.* The child's interest is the paramount consideration in custody modifications and takes precedence over the parent's interests and desires. *Id.* at 1088. Moreover, the noncustodial parent must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of child custody; the noncustodial parent must show that changed circumstances regarding the custodial parent's stability and the child's well-being are substantial. *Simons v. Simons,* 566 N.E.2d 551, 555 (Ind.Ct.App.1991); I.C. § 31–1–11.5–22(d).

In the present case, the evidence established that Mother changed residences six times within the year preceding the modification hearing. After living in a three bedroom apartment in Country View Estates, a HUD financed complex, she moved in with her boyfriend, Gary. When she broke up with Gary, Mother moved into a five bedroom house on Brady Street which she shared with two other adults, her boyfriend Tom Evertt, and four children. The house on Brady Street proved to be in poor condition, however, and Mother was forced to move again due to a leaking roof, a leaking water heater, and electrical problems. Mother stayed temporarily with her grandmother, and she left both children with Father until she found a suitable place for them. Tiffany spent one week at Father's house, and Nathaniel stayed for three weeks. Then Mother and her boyfriend Tom moved into a two bedroom trailer in the country with the children for approximately one month. At the time of the modification hearing, Mother and Tom lived in a trailer at the MarJan Trailer Park where they had resided for approximately two months.

The evidence demonstrated a lack of stability in the children's lives caused by Mother's frequent moves. The fact that Mother occupied six different residences within a one year time period supports the conclusion that a substantial change occurred in the custodial arrangement. Moreover, the evidence indicated that Mother had a difficult time providing appropriate shelter for the children, and she was forced to leave them with Father on one occasion when she was in between residences.

▉ Contrary to Mother's situation, Father appeared able to provide the stability that was lacking in the children's lives. Father had remarried and lived in a four bedroom house owned by his wife and mother-in-law. He shared the home with his wife, his father-in-law, and two other children. We conclude that sufficient evidence existed here to support a modification in custody. Due to a substantial change in Mother's ability to provide stability and shelter for her children, the trial court did not abuse its discretion in concluding that a custody modification was in the children's best interests. Although I.C. § 31–1–11.5–22(d) no longer requires a find-

ing that the current custody arrangement is unreasonable before allowing a modification, we emphasize that continuity in custody remains a key element in determining the best interests of a child. However, the record in the case at bar is sufficient to support the trial court's conclusion that the children's best interests required that custody be transferred to Father.

Judgment is affirmed.

STATON, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully dissent. The majority opinion states that "(T)he fact that Mother occupied six different residences within a one year time period supports the conclusion that a substantial change occurred in the custodial arrangement." The majority holds that there was sufficient evidence to show a substantial change in Mother's ability to provide stability and shelter for her children. This may be evidence that the best interests of the child would be served by a stable environment, however, it would also be in the best interests of the child if the Father had paid his support in a timely manner. Therefore we must turn to the second part of the custody modification statute, I.C. 31–1–11.5–22(d) which directs the court to consider all relevant factors including the following:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community; and

(6) the mental and physical health of all individuals involved.

I.C. 31–1–11.5–22(d) states that the court may modify a child custody order only when

it is in the best interests of the child *and* there is a substantial change in one or more of the factors provided in I.C. 31–1–11.5–21(a). A "substantial change in the custodial arrangement" is not one of the factors provided by statute. It may be true that a more stable living arrangement may be in the best interests of the child but the statute is in the conjunctive and there has been no showing of any of the six (6) factors included in I.C. 31–1–11.5–21(a). I would reverse the trial court's determination to modify custody as being unsupported by the evidence.

### ORDER

This Court having heretofore handed down its opinion in this appeal marked "Memorandum Decision, Not for Publication"; and

Comes now the Honorable R. Perry Shipman, Judge, Benton Circuit Court and requests this Court to publish said decision for the reason that the opinion deals with the 1994 General Assembly's change in the standard for Modification of Custody Statute, I.C. 31–1–11.5–22(d)(2);

And this Court, having reviewed its opinion in this case, and being duly advised, now finds that the request of Judge Shipman should be granted and that this Court's opinion in this appeal heretofore handed down as a Memorandum Decision should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. This Court's opinion heretofore handed down in this cause on April 25, 1996 marked "Memorandum Decision" is now ordered published.

/s/ John T. Sharpnack
Chief Judge