Teresa A. MUNDON, Appellant–
Petitioner,

v.

Joseph S. MUNDON, Appellee–
Respondent.

No. 57A03–9803–CV–128.

Court of Appeals of Indiana.

Jan. 11, 1999.

John C. Grimm, Auburn, for Appellant–Petitioner.

Daniel F. Diggins, Kendallville, for Appellee–Respondent.

### OPINION

HOFFMAN, Senior Judge.

Appellant–Respondent Teresa A. Mundon (Teresa) appeals from the circuit court's Written Entry awarding primary physical custody of her two minor children to their father (her ex-husband), Joseph S. Mundon (Joseph). The facts relevant to the issue before us are set forth as follows:

On November 11, 1997, the marriage of Teresa and Joseph was dissolved by the circuit court, which also approved and entered a "Support, Custody and Property Settlement Agreement" (the "Agreement") submitted to it by the parties. The Custody and Visitation section of the Agreement provided:

B. CUSTODY AND VISITATION:

The Petitioner [Joseph] and Respondent [Teresa] shall have joint custody of the minor children ... with Respondent having primary physical custody and Petitioner to exercise his custody during his periods of visitation....

[ ... ]

Primary custody to the Respondent shall be conditioned upon the following:

(1) Respondent shall continue in alcohol counseling and submit proof of her attendance at said counseling to the Petitioner at least on a monthly basis.

(2) Respondent shall successfully complete such alcohol counseling, including any recommended after-care such as AA attendance.

(3) Respondent shall not abuse alcohol at any time or place, public or private, and not be arrested for any alcohol offense.

(4) Such conditions shall remain in effect, unless modified in writing by the parties, until the parties' youngest child is emancipated.

If Respondent violates any of the above conditions then primary physical custody of the two minor children shall forthwith and voluntarily be placed with the Petitioner. Respondent shall then be entitled to the visitation outlined herein for the Petitioner.

On the evening of Friday, January 9, 1998, Joseph picked up the children for his regularly scheduled weekend visitation with them. Pursuant to Joseph's direction, his attorney mailed a letter (dated January 9) containing the following text to Teresa's attorney:

My client has returned to my office and has advised that his former wife has violated the terms and conditions of her primary custody of the two minor dependent children. Specifically, she has not done the following:

(1) Sent proof of her attendance at continued alcohol counselling.

(2) Has not successfully completed alcohol counselling including any recommended aftercare.

Due to the fact that she has violated those conditions then in accordance with

the agreement, the primary physical custody of the two minor children shall be forthwith and voluntarily placed with Mr. Mundon. Mrs. Mundon would then be entitled to the visitation outlined originally for Mr. Mundon.

Notice is hereby given you that Mr. Mundon has retaken the physical custody of the minor dependent children in accordance with the Decree of Dissolution of Marriage.

Would you please notify your client accordingly and further notify her that in accordance with the support obligation worksheet, she should commence immediately paying the sum of $61.00 per week for the support and maintenance of the minor dependent children through the Clerk of the Court.

If you have any questions please advise at your earliest opportunity.

On January 12, 1998, Teresa filed a "Petition for Contempt and Petition for Immediate Order for Return of Children." That same day, the trial court entered its "Order for Immediate Return of Children and Notice of Hearing."[1] Joseph did not return the children, and on January 14, 1998, he filed a "Status Report and Request for Hearing." The trial court conducted a hearing on January 16, 1998, and at that time issued the Written Entry from which Teresa appeals. The pertinent paragraphs of the Written Entry read:

3. Father presented evidence that he had not received proof of Mother's attendance at any alcohol counseling on a monthly basis and he contends that she had not followed through with recommended aftercare. Pursuant thereto, he kept the children with him on Sunday, January 11, 1998, after his visitation weekend. He retains the children at this time contending that the terms of the Decree provide that he is now the primary physical custodian.

4. Mother has submitted Exhibits setting forth her progress reports from her alcohol counseling program under dates of November 12, 1997, December 8, 1997, and

January 12, 1998. She contends that the December 8, 1997, Report showed satisfactory participation and that she furnished that Report to Father by sending it with their daughter's school papers when their daughter went to Father's home for visitation. The first report was received by Mother the day after the Decree was entered and showed "unsatisfactory completion". The third Report was received by Mother the day after Father retained the children.

5. Mother contends that the Decree contemplates it is necessary for Father to request the proof of her attendance at alcohol counseling and that her due process rights require that she receive a hearing requiring him to prove that she has violated the terms of the Agreement. She contends that Father has no automatic right to receive the children without following the procedures set forth by her in her contentions.

6. The Court has examined the Agreement and finds that the burden is upon Mother. She "shall continue in alcohol counseling and submit proof of her attendance at said counseling to the Petitioner at least on a monthly basis."

7. Father contends that he never received the December 8, 1997, Report. The burden is not on the parties' children to transport these documents from one parent to the other. Mother has the responsibility of submitting the proof "to the Petitioner". There is no requirement in the Agreement for Father to request that Mother submit the proof.

8. The parties entered into this Agreement. They set forth these provisions which were approved and made an order of the Court. The provisions also provide that if mother "violates any of the above conditions.then primary physical custody of the two minor children shall forthwith and voluntarily be placed with the Petitioner" (Father). There is nothing in the Agreement requiring a hearing to be held. The Court interprets the Agreement to

---

1. This order was later rescinded and replaced by the Written Entry from which Teresa now appeals.

require Mother to come forth with the proof that she has complied with the Agreement. If she fails to provide that proof, Father has the right to invoke the "forthwith and voluntary" change of the primary physical custodian provisions of this Agreement.

9. The Court finds that the provisions of the Agreement are automatic and have taken effect and the primary physical custodian has changed from Mother to Father, as provided in the Agreement.

10. The Court finds that Mother's Petition For Contempt and Petition For Immediate Order For Return Of Children should be denied and she is granted the visitation privileges which were set forth for Father in the Agreement, effective forthwith.

ALL OF WHICH IS NOW ORDERED, ADJUDGED, AND DECREED and prior Orders are modified accordingly this 16th day of January, 1998.

In her brief to this court, Teresa raises four issues, which we restate as:

1. Whether the trial court violated Ind. Code § 31–17–2–21, abused its discretion and committed an error of law in modifying the child custody order without finding that the modification was in the best interests of the children and without finding the existence of a substantial change in one of the statutory custody factors.

2. Whether the parties' Support, Custody and Property Settlement Agreement required any specific form of proof of Teresa's attendance at alcohol counseling.

3. Whether a custody modification pursuant to the conditions contained in the parties' Support, Custody and Property Settlement Agreement is temporary or permanent.

4. Whether the parties' joint custody of their children imposed and imposes an obligation upon Joseph to seek out proof of the mother's attendance of alcohol counseling.

As discussed below, Teresa's contentions as to the second and fourth issues she raises are not accurate under the law and the terms of the parties' Agreement. However, the issue of the validity of self-executing provisions in custody agreements is one of first impression in Indiana.

Ind.Code § 31–17–2–21 governs the modification of child custody orders, and provides:

(a) The court may not modify a child custody order unless:

(1) the modification is in the best interests of the child; and

(2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 [Ind.Code § 31–17–2–8] of this chapter.

(b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

(c) The court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described by section 8 of this chapter.

The factors listed in section 8 to be considered in determining the best interests of the child are:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic violence by either parent.

Ind.Code § 31–17–2–8.

In considering the foregoing "best interests" factors, the trial court's inquiry is strictly limited to consideration of changes in

circumstances which have occurred since the last custody decree. *Hanson v. Spolnik*, 685 N.E.2d 71, 77 (Ind.Ct.App.1997), *trans. denied*, citing *Spoor v. Spoor*, 641 N.E.2d 1282, 1285 (Ind.Ct.App.1994).

A determination of custody or a modification in custody lies within the sound discretion of the trial court. *Swonder v. Swonder*, 642 N.E.2d 1376, 1380 (Ind.Ct.App. 1994); *Van Schoyck v. Van Schoyck*, 661 N.E.2d 1, 4 (Ind.Ct.App.1996), *trans. denied*. On review of a child custody modification, we do not reweigh evidence or reassess witness credibility. Moreover, we consider only the evidence which supports the trial court's decision. *Wallin v. Wallin*, 668 N.E.2d 259, 261 (Ind.Ct.App.1996). The noncustodial parent must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of child custody; the noncustodial parent must show that changed circumstances regarding the custodial parent's stability and the child's well-being are substantial. *Id.*

In a case such as the one before us, however, the appellate court must also acknowledge the freedom of the parties to enter into agreements settling their own affairs. Indiana law "expressly encourages" divorcing spouses to reach such agreements. *Kizziah v. Kizziah*, 651 N.E.2d 297, 298 [2]. A property settlement agreement which is merged and incorporated into a divorce decree is a binding contract. *Bowman v. Bowman*, 567 N.E.2d 828, 831 (Ind.Ct.App.1991). It is well settled that divorcing spouses have more flexibility in crafting their own property settlements than do divorce courts. 567 N.E.2d at 830. Parties may agree to provi-

sions which a trial court could not order. *Kizziah*, 651 N.E.2d at 298. "In the usual case, freedom of contract will, it is hoped, produce mutually acceptable accords, to which parties will voluntarily adhere." *Voigt v. Voigt*, 670 N.E.2d 1271, 1278 (Ind.1996). Apparently guided by these principles, the trial court reached its determinations that, "[t]he parties entered into this Agreement. They set forth these provisions which were approved and made an order of the Court" and "the provisions of the Agreement are automatic and have taken effect and the primary physical custodian has changed from Mother to Father, as provided in the Agreement," and that because of the contractual nature of settlement agreements, the trial court could not rewrite the terms and impose a different result. Indeed, *Voigt* stands for the proposition that a court has no statutory authority to grant a contested petition to modify a maintenance obligation that arises under a previously approved settlement agreement if the court *alone* could not initially have imposed an identical obligation had the parties never voluntarily agreed to it. 670 N.E.2d at 1280.

We agree with the trial court that although the Agreement did not specifically set forth whether the "proof" to be submitted to Joseph by Teresa of her attendance at alcohol counseling was to be in writing or not, it was incumbent upon her to submit it, not upon him to request it. It almost goes without saying that the word "proof" is commonly taken to mean more than an oral assertion. Proof is "[t]he evidence or argument that compels the mind to accept an assertion as true." [3] Under the plain meaning of the contractual term "proof," Teresa

---

**2.** *Kizziah* also cites Ind.Code § 31-1-11.5-10(a), since repealed pursuant to P.L. 1-1997, § 157, effective July 1, 1997. The current statute expressing the same legislative purpose is found at Ind.Code § 31-15-2-17:

(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for:

(1) the maintenance of either of the parties;
(2) the disposition of any property owned by either or both of the parties; and
(3) the custody and support of the children of the parties.

(b) In an action for dissolution of marriage:

(1) the terms of the agreement, if approved by the court, shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms; or
(2) the court may make provisions for:
(A) the disposition of property;
(B) child support;
(C) maintenance; and
(D) custody;
as provided in this title.

**3.** THE AMERICAN HERITAGE COLLEGE DICTIONARY, 3d Ed., 1997.

was to provide "evidence" of her counseling to Joseph, and nothing in the Agreement indicates that he was required to pester her to do so. Furthermore, it is clear, as a simple matter of common sense and public policy, that the burden should by no means be placed upon the parties' children to transport such evidence or information from one parent to the other. We find that, contrary to Teresa's arguments, the trial court correctly found that the terms of the Agreement can be taken to impose upon Teresa the obligation to submit "proof" in writing to Joseph of her compliance with counseling, and cannot be taken to impose upon Joseph the obligation to request such proof. In fact, the attempt of the parties to structure an Agreement under which physical custody would "forthwith and voluntarily" shift to Joseph if Teresa failed to "continue in alcohol counseling" *and* to "submit proof of her attendance at said counseling to [Joseph] at least on a monthly basis" indicates the importance of the counseling in the minds of both parties and their intent that Joseph be regularly and systematically—once a month *at least,* not at most—apprised of whether Teresa was in compliance with that term.

In addition to the importance placed upon the alcohol counseling by the parties when they crafted their agreement, such counseling can be said to go to the sixth factor listed in Ind.Code § 31–17–2–8, the mental and physical health of all individuals involved. We could arguably find that the trial court tacitly based its Written Entry upon evidence that there was a substantial change in that factor, *i.e.,* physical custody was awarded to Teresa because she was about to undergo the counseling, the evidence at the last hearing tended to cast doubt upon her involvement in that counseling, and so a change had occurred.[4] As stated above, we are to consider only the evidence favorable to

the judgment of the trial court exercising its discretion as fact-finder.

■ However, Ind.Code § 31–17–2–21 clearly states that in addition to finding a substantial change in one of the factors, the trial court *may not* modify a child custody order unless the modification is in the best interests of the child, *and* that in making its determination, the court *shall* consider the factors listed under section 8 of this chapter (emphasis supplied). *See also Palm v. Palm,* 690 N.E.2d 364, 369 (Ind.Ct.App.1998), *trans. denied* ("the trial court must determine both whether a change is in the child's best interest and whether there has been a substantial change in one or more of the factors which were initially used to determine custody"). Joseph argues that the failure of Teresa to comply goes to factors 6, 5 and 4 of the best interests statute, "although the court did not set this out directly." We cannot affirm a *custody modification based upon such "tacit"* consideration of the best interests factors, rather than the explicit articulation the legislature intended.

■ Furthermore, this court has consistently held that lack of cooperation or isolated acts of misconduct by a custodial parent cannot serve as a basis for the modification of child custody. *Hanson v. Spolnik,* 685 N.E.2d 71, 78 (Ind.Ct.App.1997); *Wallin v. Wallin,* 668 N.E.2d 259, 261 (Ind.Ct.App. 1996). In spite of Teresa's failure to comply with the "letter" of the Agreement, by submitting proof of her attendance at counseling directly to Joseph without his asking for it, there was also evidence that Teresa complied at least two months in a row with the "spirit" of the agreement, as she was able to submit to the trial court written proof of her successful attendance at counseling in December and January.[5]

4. The trial court also heard Joseph's testimony that "my children [say] that she is still drinking at home." We are not in a position to reassess the credibility of that statement.

5. It is worth noting that Teresa received and submitted to the trial court a "Progress Report," from the treatment facility dated January 12, 1998, and signed by her counselor, stating "Ms. Mundon has completed 14 hours CD Education treatment. Her attendance has been good, and

she participates fully in the group process. Ms. Mundon is expected to discharge in February 1998." On the date of that report, Joseph had already determined to keep the children and enforce the automatic custody-change provision of the Agreement. It seems both that Teresa was complying with the spirit of the Agreement, and that, in the case of January's report, was not given the chance to comply with the letter of it. Neither this court nor the trial court is in the

■ The most important reason we cannot affirm or endorse an automatic change of custody provision such as is before us in Teresa and Joseph's Agreement was articulated by Chief Justice Shepard in *Voigt*. In a footnote to the freedom of contract language cited above, he explained that "the same principles and standards cannot apply to child custody and support provisions of proffered settlement agreements.... If there is one overriding policy concern in dissolution actions, it is protecting the welfare and interests of children." We have already stated that the core holding of *Voigt* is that a court has no statutory authority to grant a contested petition to modify a maintenance obligation that arises under a previously approved settlement agreement if the court *alone* could not initially have imposed an identical obligation had the parties never voluntarily agreed to it. 670 N.E.2d at 1280. This rule of law has analogous application to our case, insofar as the trial court itself could not have circumvented the best-interests finding *before* a custody modification would come into effect, and so it cannot in essence "ratify" an automatic change of custody simply because the divorcing parents agreed to it. Divorcing parties are free to anticipate many future events and contingencies in maintenance and property agreements, to de-

clare that alternate terms will "automatically" come into effect upon the occurrence of those events, and even to agree that their agreements shall be shielded from judicial modification without their agreement to such modification. But where provisions are made in the interest of the support and custody of children, as opposed to those which merely set forth rights in property, our legislature and sound public policy dictate that the trial court must play a role, and a settlement agreement cannot be shielded from or circumvent the court's fulfillment of that duty.

The trial court's order automatically shifting custody from Joseph to Teresa is reversed, and the matter remanded to the trial court for a hearing pursuant to the statute.

Judgment Reversed.

SHARPNACK, C.J., and SULLIVAN, J., concur.

position to assess whether she "would have" submitted the January report to Joseph without

his asking for it or not.