

**FILED**

Jun 18 2020, 9:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Julie C. Dixon
Alexander N. Moseley
Brian L. Ciyou
Ciyou and Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

William O. Harrington
Harrington Law, P.C.
Danville, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Dawn (Gruca) Jones,

*Appellant-Petitioner,*

v.

Steven Alan Gruca,

*Appellee-Respondent.*

June 18, 2020

Court of Appeals Case No.
19A-DR-2484

Appeal from the Hendricks
Superior Court

The Honorable Rhett M. Stuard,
Special Judge

Trial Court Cause No.
32D02-1501-DR-33

**Najam, Judge.**

## Statement of the Case

[1]     Dawn Jones ("Mother") appeals the dissolution court's denial of her motion to modify child custody. Mother raises three issues for our review, which we restate as the following two issues:

1. Whether the dissolution court's decision to deny Mother's motion is supported by substantial evidence.

2. Whether the trial court denied the parties their constitutional rights when it ordered them to work with a parenting coordinator prior to filing future motions or petitions with the court.

[2] We affirm.

## Facts and Procedural History

[3] Mother and Steven Gruca ("Father") were married in 1999 and had two children during the marriage, D.G. and B.G. ("the children"). Thereafter, Mother filed a petition for dissolution of the marriage. In May of 2018, the trial court held a fact-finding hearing on the dissolution petition, after which it entered its order dissolving the marriage and establishing custody, parenting time, and child support for the children.

[4] Following the fact-finding hearing but prior to the entry of the decree of dissolution, Mother moved to modify custody over the children. After various other motions and additional fact-finding hearings, in September 2019 the court entered its order denying Mother's motion. In relevant part, the court's September 2019 order found and concluded as follows:

> 3. Currently, the parties share joint legal and shared physical custody of the boys and exercise a 2/2/3 parenting time schedule.

4. Mother alleges in her Motion for Modification that several continuing changes in circumstances exist that warrant a modification of custody and visitation and that a change is in the best interest of the children.

5. Indiana Code § 31-17-2-21 allows the Court to modify custody only if [(1)] a "modification is in the child's best interests and (2) there is a substantial change in one of several factors that a court may consider in initially determining custody."

6. Among others, some of those factors are: " . . . (2) the wishes of the child's parent or parents; (3) the child's wishes, with more consideration given to the wishes of a child who is at least fourteen years old; (4) the child's interaction and interrelationship with his or her parents, siblings, and any other person who may significantly affect the child's best interests; (5) the child's adjustment to his or her home, school, and community; (6) the mental and physical health of all individuals involved . . . ." *Id.*

7. There must be a showing of "something more than isolated acts of misconduct . . . to warrant a modification of child custody." *Wallin v. Wallin*, 668 N.E.2d 259, 261 (Ind. Ct. App. 1996).

8. In considering the foregoing "best interests" factors, the trial court's inquiry is strictly limited to consideration of changes in circumstances which have occurred since the last custody decree. *Mundon v. Mundon*, 703 N.E.2d 1130, 1133-34 (Ind. Ct. App. 1999).

9. Mother alleges several factors have changed.

10. First, Mother alleges that [D.G.] has explicitly and unequivocally expressed his desire to primarily live with Mother and have regular parenting time with Father.

11. Second, Mother alleges that Father does not effectively help [D.G.] with his homework and this results in Mother having to assist him, often at the last minute.

12. Third, Mother alleges that [B.G.] has regressed in his school work and that he is "now failing several classes."

13. Fourth, Mother alleges that [B.G.] has re-developed the behavioral problems and that he had to return to counseling.

14. Fifth, Mother alleges that while in Father's care the children are allowed to play video games, thereby "stunting their intellectual growth."

15. Sixth, Mother alleges that Father focuses his interactions with the children solely on sports and ignores the children's other interests.

16. Seventh, Mother alleges that [D.G.] has developed a weight problem and that Father feeds the kids only "junk food" or "fast food."

17. Eighth, Mother alleges that [D.G.] does not desire to live with Father.

18. Before addressing Mother's contentions, the Court notes that the Motion for Modification at issue here was filed by Mother BEFORE the Court could issue findings and conclusions regarding visitation . . . .

19. At the May 15, 2018[,] hearing . . . the parties informed the Court that the 2/2/3 schedule arranged by the Parenting Coordinator ("PC") was working and providing them with approximately equal parenting time.

20. However, just 30 days after the hearing and 5 days PRIOR to the submission of her proposed findings from that hearing, Mother filed the present Motion to Modify.

21. The point is, Mother did not even wait to see what the Court decided[] before deciding there needed to be a change.

22. Petitions, like Mother's in this case, are why the holding in *Mundon*, 703 N.E.2d 1130, exists. A court may make a determination of what is in the best interests of the children, based on all the available evidence existing up to that point, and those issues are forever put to rest.

23. The Court, and the parties, may rely on the fact that all of those issues have been resolved and only NEW issues or information will be presented to the Court at a later date.

24. If not for this holding, a litigant could dredge up any incident from the past, including one already litigated, and present it to the Court at any time. The litigation would never end.

25. Therefore, this Court could hold that everything Mother raises in her petition is moot because the allegations must have occurred BEFORE the most recent custody order was issued.

26. A holding by the court such as this would comport with the law and public policy. However, given the history of this case, as well as the time and money invested by all involved, the Court doubts that anyone would be satisfied with such an outcome.

27. Therefore, the Court will address the issues on the merits.

28. A number of the issues raised in Mother's motion amount to little more than her disagreement with Father's parenting style and are not a true change in circumstances. Father allows the boys to play video games. Father feeds the boys junk food. Father engages the boys in conversations mostly about sports.

29. Evidence presented to the Court also made clear that Mother has made no serious attempt to co-parent or to utilize the services of the PC in good faith.

30. Mother's hired custody evaluator, Dr. Bart Ferraro, went so far as to conclude on page 74 of his report that the Court should "scrutinize more carefully [Mother's] cooperation in the Parenting Coordination process and administer sanctions for any new or continued pattern of resistance or obstruction . . . ."

31. All of this speaks loudly to the Court about Mother's displeasure with the original findings . . . .

32. It is clear that Mother has made little to no effort to cooperate or co-parent and is partially attempting to re-litigate the custody issues originally heard in this case more than 2 years ago.

33. It is through this lens that the Court will examine Mother's claims of substantial and continuing changes that necessitate a modification in custody and visitation.

34. The Court finds little or no evidence was presented to substantiate the allegations listed as numbers 2, 3, 4, 5, 6, and 7 above.

35. There is insufficient evidence to conclude that these allegations constitute such a substantial and continuing change in circumstances so as to support a modification of custody and visitation.

36. Allegation 2 has some basis in truth, as admitted by Father, but the parties partially resolved this by arranging for the boys to be dropped off by the bus at Mother's home every night after school so she could help them with their homework.

37. Further, Father testified that[,] although he may not assist the boys with their homework in the fashion Mother would like, the boys work hard when at his house to finish their homework in a correct and timely fashion.

38. The Court further finds that[,] while Mother may not find Father's assistance to be to her liking, the boys are achieving good grades under the current arrangement.

39. Therefore, allegation 2 is insufficient to render the current arrangement unreasonable so as to justify a modification.

40. Allegation 3 was proved to be patently false.

41. Evidence was presented showing [B.G.] making all A's.

42. Although at the time the motion was filed [B.G.'s] grades may have been lower, no evidence at all was presented to show this is a continuing issue for [B.G.]. The Court finds it disingenuous by Mother to even advance this claim.

43. Allegation 4, that [B.G.] has had to return to counseling is also insufficient to support a modification.

44. Dr. Ferraro opines on Page 71 of his report that [B.G.'s] counselor has not been kept appraised [sic] of [B.G.'s] continuing issues and according to the counselor THIS established the counselor's need to reevaluate and consider resuming treatment of [B.G.].

45. Mother proved nothing done by Father that resulted in the need to return [B.G.] to counseling. She relies primarily on her general displeasure with Father's parenting style and her belief this is harming the boys.

46. The Court finds that the ongoing conflict resulted in [B.G.'s] need to return to counseling and not anything in particular done by Father.

47. The fact that [B.G.] needs further assistance to deal with his parents' issues is not uncommon nor a development that warrants a modification.

48. Allegation 5 is that the boys' intellectual growth is being "stunted" by playing video games at Father's house.

49. First, the Court notes that the boys play video games at both homes.

50. Second, the Court notes that the boys appear to be doing well in school, based on their grades and the reports of their teachers.

51. Mother may not like how Father runs his home, but she has shown no evidence to support her allegations related to the detrimental effect of video games at Father's home.

52. Allegation 6 is that Father only engages the boys in conversations about sports and that this is detrimental to them.

53. Testimony offered at the hearing, as well as observations made by the boys' teachers, relatives, and Dr. Ferraro, prove this allegation to be overblown at best.

54. Many fathers and sons spend time talking sports. Although this shouldn't be the only topic they discuss, it is not necessarily unhealthy.

55. In this case, evidence was presented that Father talks to his sons about many things including homework, school, movies, and food.

56. No evidence was presented that convinces this Court that Father spends an inordinate amount of time talking sports with his sons, nor that his interactions with them warrant a modification in custody or parenting time.

57. Allegation 7 is that [F]ather feeds the kids poorly and that [D.G.] has a weight problem.

58. Pursuant to the testimony of both parents, [D.G.] is a very good offensive lineman for the Avon High School football team, recently ranked #1 in Class 6A in Indiana.

59. Offensive linemen are large human beings, usually with nimble feet and quick hands, who are required to push, pull, shove, and run on nearly every play.

60. The Court does not know [D.G.'s] actual weight but doubts that during football season he can consume enough calories to

replace those he regularly burns at practice, in the weight room, and during games.

61. Father testified that although he is not a great cook, he makes spaghetti and other meals for the boys at his home. Additionally, they eat school lunches daily and could eat breakfast at school if needs be.

62. The Court finds insufficient evidence exists to support Mother's claims.

63. Finally, allegations number 1 and number 8 made by Mother are effectively the same, that [D.G.] has explicitly and unequivocally expressed his desire to primarily live with Mother and have regular parenting time with Father.

64. [D.G.] is, by all accounts, a fine young man who likes to hunt and fish and is an offensive lineman for the football team at Avon High School.

65. [D.G.] struggles somewhat in school and has an IEP in place, but on the whole makes good grades consisting mostly of A's and B's with occasional lower marks sprinkled in.

66. The Court does not doubt that he desires the drama between his parents to end, nor that he has expressed his desire to live primarily with Mother.

67. What the Court must ascertain is whether this desire satisfies the requirements of Indiana Code § 31-17-2-21 warranting a modification of custody and visitation.

68. The Court notes that [B.G.] did not consistently express the same strong desire as [D.G.] to live primarily with Mother.

69. At one session with Dr. Ferraro, [B.G.] seemed to like the split custody relationship because it meant that he got to see both of his parents more regularly.

70. At a different session, [B.G.] expressed preference for going to Mother's home over Father's.

71. Although younger than [D.G.], [B.G's] wishes must be considered as well.

72. The recommendation of Dr. Ferraro is that the Court modify the custody arrangement to place primary physical custody with Mother and grant Father strictly guideline visitation.

73. To minimize conflict, Dr. Ferraro urged the Court to allow no deviation to this arrangement to be made by the parents, even by agreement.

74. Neither Mother nor Father testified that they were satisfied with this suggestion.

75. Father would be losing significant time with the children.

76. Mother argued that an order allowing no alterations would prevent the parties from allowing the boys to do special things with friends or family when those things happened during the other parent's scheduled parenting time.

77. The Court heard copious testimony that [D.G.] loves spending time with his maternal grandfather ("Grandpa") and often he hunts, fishes, and works on cars with Grandpa during Father's parenting time.

78. Under Dr. Ferraro's recommendation, this could not occur.

79. The testimony presented to the Court convinces the Court that Grandpa is [D.G.'s] hero.

80. The Court has no qualms about [D.G.] spending time with Grandpa and listened to Grandpa testify about the things he teaches [D.G.].

81. He appears to be a very good role-model for [D.G.] and [D.G.] loves him very much.

82. [D.G.] was asked by Dr. Ferraro what three "magical" wishes he would make and his first was for Grandpa to "always be with him."

83. Thus, strictly adopting Dr. Ferraro's recommendation might well do more harm than good to this young man.

84. The Court will not take that risk.

85. Thus, in light of the above and considering the factors listed in Indiana Code § 31-17-2-21, the Court finds that it is NOT in the best interests of the parties' minor children to modify the current custody arrangement and therefore DENIES Mother's petition.

86. Although conflict between the parents is high, the Court does not find sufficient factors exist to warrant a change in custody or visitation, nor that this is in the children's best interest.

87. The Court is FIRMLY convinced that any conflicts that have arisen in this case are due to the behaviors of the parents,

primarily Mother, and that if this high drama would stop, the boys could thrive under the current schedule.

88. Mother simply has not given the Court's original order a chance to work.

89. She has not cooperated with the PC.

90. She refuses to co-parent with Father.

91. Until such time as she can demonstrate to the Court[] that[,] despite her best efforts and her cooperation, the current arrangement is not beneficial to the children, the Court will not enter an order modifying custody or visitation.

92. In that light and pursuant to the Court's prior orders, the PC remains appointed in this cause and the parties are still under an obligation to cooperate with her and seek her counsel.

93. The Court cautions Mother that any further refusal to cooperate with the PC, any further actions such as ignoring the PC or refusing to follow her recommendations, could result in severe sanctions.

94. This Court will not tolerate further behavior of this nature.

* * *

114. Effective as of the date of this ORDER, prior to the filing of any petition by either party to modify custody, support, visitation, regarding summer parenting schedules, regarding additional parenting time, or similar matters, the parties must

first engage the services of the PC and cooperate with her requests for information and/or meetings.

115. Moreover, the parties must make a good faith effort to comply with the recommendations of the PC or, if the party believes the PC's recommendation is in contravention of the law, to explain in detail to the PC why and to work out a compromise.

116. If, after all of this, the parties still do not agree with the recommendations of the PC or they believe them to be in contravention of law, the parties may file a petition with the Court asking the Court to make a final decision on the issue.

117. Any such petition SHALL explain in great and exacting detail, citing legal authority where appropriate, what specific recommendation of the PC they disagree with, why they disagree with it, what they have done to resolve the issue (citing specific discussions they have had with the PC and the opposing party), and shall provide to the Court a viable alternative compromise to resolve the matter.

118. The Court will not consider any complaints in the nature of a general disagreement with the PC's decision.

119. With regard to any petitions filed with this Court that the Court deems frivolous, cumulative, and/or unfounded, including those that do not comply with the above, the Court will assess costs and attorney fees to the party filing such a petition.

120. Moreover, in any instance where the Court finds that a party flagrantly ignored the orders of the Court or the PC, the Court will impose sanctions.

Appellant's App. Vol. II at 37-46, 48 (some internal citations omitted and some alterations in original).  This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[5] Mother appeals the dissolution court's denial of her motion to modify custody. In denying Mother's motion, the court entered findings of fact and conclusions thereon following an evidentiary hearing.  In such appeals, we review the court's judgment under our clearly erroneous standard.  *E.g.*, *Salyer v. Washington Regular Baptist Church Cemetery*, 141 N.E.3d 384, 386 (Ind. 2020). We "neither reweigh evidence nor judge witness credibility."  *R.L. v. Ind. Dep't of Child Servs. & Child Advocates, Inc.*, 144 N.E.3d 686, 689 (Ind. 2020).  Rather, a judgment is clearly erroneous only when there are no record facts that support the judgment or if the court applied an incorrect legal standard to the facts.  *Id.*

[6] Moreover, Mother bore the burden of proof on her motion in the trial court. Thus, her appeal from the court's denial of that motion is an appeal from a negative judgment.  *Town of Brownsburg v. Fight Against Brownsburg Annexation*, 124 N.E.3d 597, 601 (Ind. 2019).  "Under our case law, the party challenging a negative judgment generally must show on appeal that the evidence leads unerringly and unmistakably to a decision opposite that reached by the trial court."  *Id.* (quotation marks, omission, and citation omitted).

### *Issue One: Whether the Court's Judgment is Supported by the Record*

Mother first asserts that the court's judgment is clearly erroneous because it is not supported by sufficient evidence. Specifically, Mother first argues that the court's September 2019 order does not sufficiently identify a valid basis for its decision to deny her motion for modification. Second, Mother asserts that the evidence does not support the court's judgment.

We first address Mother's argument that the court's written order fails to make its judgment clear. In particular, Mother complains that many of the court's findings are mere recitations of arguments or statutes; that the court "spent a considerable amount of time chastising Mother," Appellant's Br. at 16; that the court somehow inappropriately "seemed to focus more on disproving Mother's allegations," *id.* at 20; that the findings "fail to properly consider the statutory factors" regarding the best interests of the children, *id.*; that the court was obliged to address every possible statutory factor and the failure to mention an irrelevant factor is *per se* reversible error, *id.* at 20-21; and that the court failed to explicitly identify the statutory factors on which it did rely.[1]

As our Supreme Court has made clear:

> The principal purpose of findings of fact "is to have the record
> show the basis of the trial court's decision so that on review the

---

[1] In a footnote, Mother suggests that the trial court failed to give the parties an opportunity to submit proposed findings of fact and conclusions thereon. Insofar as Mother's footnote is intended to be an argument on appeal, it is not supported by cogent reasoning or citations to authority or the record on appeal. Accordingly, we do not consider it. *See* Ind. Appellate Rule 46(A)(8)(a).

appellate court may more readily understand the former's view of the controversy." *Love v. State*, 257 Ind. 57, 59, 272 N.E.2d 456, 458 (1971) (quoting 3 William F. Harvey, Indiana Practice 426 (1970)). Findings of fact must be "sufficient to enable this Court to dispose of the issues upon appeal." *Taylor v. State*, 472 N.E.2d 891, 892 (Ind. 1985).

*Dowdell v. State*, 720 N.E.2d 1146, 1152 (Ind. 1999).

[10] We cannot agree with Mother's first argument. No reasonable person would read the trial court's judgment, as reproduced in substantial part above, and reach any of Mother's conclusions or otherwise be left with any uncertainty as to the basis for the court's judgment. Being generous to Mother's argument on this issue, we conclude that, at best, she is attempting to elevate technicalities or form over the clear substance of the trial court's judgment, which we decline to do. We reject Mother's first argument.

[11] Mother next asserts that the trial court's findings of fact are not supported by substantial evidence. In particular, she asserts that the trial court clearly erred when it concluded that there was insufficient evidence to justify a modification in custody. It is well established that, to modify an existing child support order,[2] the modification must be in the best interests of the children and must be based on a "substantial change" in one or more of the statutory factors that

---

[2] Although the court concluded that Mother's motion to modify was prematurely filed, it ultimately heard evidence on her motion and rendered a judgment on the merits. Accordingly, we review the merits of the court's judgment.

relate to a child's best interests in determining custody. Ind. Code §§ 31-17-2-8, -21 (2019).

[12] But Mother's argument here is not well taken. Disregarding our standard of review and her burden on appeal to show error, Mother simply asserts that three of the statutory factors "have experienced a substantial change" and then goes on to relitigate the evidence she finds favorable but that the trial court in the first instance did not find worthy of credit or controlling. Appellant's Br. at 23-40. That is, Mother does not demonstrate how the evidence as a whole "leads unerringly and unmistakably to a decision opposite that reached by the trial court." *Town of Brownsburg*, 124 N.E.3d at 601. For example, she simply disregards the fact that B.G.'s statements were ambiguous with respect to his preferred living arrangement, and she does not attempt to explain why the court might have erred in keeping the children together. She does not address the court's finding that the current schedule has benefitted B.G. academically. She does not address the court's finding that some of her allegations were "patently false" and "disingenuous," or that her "ongoing conflict" with Father has been the root of some behavioral issues with the children. Appellant's App. Vol. II at 41. Nor does she address the court's assessment that the recommendation of Dr. Ferraro—on whose report Mother nearly exclusively relies—would likely result in harm to the children and their relationship with Father. Thus, Mother has not met her burden on appeal to show that the trial court erred when it denied her motion to modify custody.

***Issue Two:  Constitutionality of the Court's Order for the
Parties to Proceed First with the Parenting Coordinator Before
Filing New Motions or Petitions with the Court***

[13]   We next address Mother's assertion that the trial court denied her her constitutional right under Article 1, Section 12 of the Indiana Constitution to open courts when it ordered her to take future issues regarding custody, support, or visitation to the PC before bringing those issues to the court.  Father agrees on appeal that the court's order is erroneous in this respect.

[14]   Although we appreciate the parties' willingness to reach an agreement, we are not bound to accept it.  Our trial courts have broad discretion in the management of their dockets, and that discretion extends to limiting the filings of parties who have demonstrated an abuse of the court's docket in the past.  *Cf. KS&E Sports v. Runnels*, 72 N.E.3d 892, 905 (Ind. 2017) ("the Open Courts clause does not prohibit all conditions on access to the courts") (quotation marks omitted).  Indeed, the Indiana Supreme Court has expressly recognized, in matters involving custody and parenting time, that our trial courts "may, in the exercise of sound discretion in discrete cases, order mediation as a prerequisite to the filing of requests for future proceedings . . . ."  *Fuchs v. Martin*, 845 N.E.2d 1038, 1042 (Ind. 2006).

[15]   And, here, the trial court found as follows:

> 87.  The Court is FIRMLY convinced that any conflicts that have
> arisen in this case are due to the behaviors of the parents,
> primarily Mother, and that if this high drama would stop, the
> boys could thrive under the current schedule.

88.  Mother simply has not given the Court's original order a chance to work.

89.  She has not cooperated with the PC.

90.  She refuses to co-parent with Father.

91.  Until such time as she can demonstrate to the Court[] that[,] despite her best efforts and her cooperation, the current arrangement is not beneficial to the children, the Court will not enter an order modifying custody or visitation.

92.  In that light and pursuant to the Court's prior orders, the PC remains appointed in this cause and the parties are still under an obligation to cooperate with her and seek her counsel.

93.  The Court cautions Mother that any further refusal to cooperate with the PC, any further actions such as ignoring the PC or refusing to follow her recommendations, could result in severe sanctions.

94.  This Court will not tolerate further behavior of this nature.

Appellant's App. Vol. II at 45-46.  Moreover, the court did not *prohibit* the parties from access to future court filings.  Rather, the court imposed "a prerequisite to the filing of requests for future proceedings," *Fuchs*, 845 N.E.2d at 1042, when it instructed as follows:

114.  Effective as of the date of this ORDER, prior to the filing of any petition by either party to modify custody, support, visitation, regarding summer parenting schedules, regarding additional parenting time, or similar matters, the parties must

first engage the services of the PC and cooperate with her requests for information and/or meetings.

115. Moreover, the parties must make a good faith effort to comply with the recommendations of the PC or, if the party believes the PC's recommendation is in contravention of the law, to explain in detail to the PC why and to work out a compromise.

116. If, after all of this, the parties still do not agree with the recommendations of the PC or they believe them to be in contravention of law, the parties may file a petition with the Court asking the Court to make a final decision on the issue.

117. Any such petition SHALL explain in great and exacting detail, citing legal authority where appropriate, what specific recommendation of the PC they disagree with, why they disagree with it, what they have done to resolve the issue (citing specific discussions they have had with the PC and the opposing party), and shall provide to the Court a viable alternative compromise to resolve the matter.

118. The Court will not consider any complaints in the nature of a general disagreement with the PC's decision.

119. With regard to any petitions filed with this Court that the Court deems frivolous, cumulative, and/or unfounded, including those that do not comply with the above, the Court will assess costs and attorney fees to the party filing such a petition.

120. Moreover, in any instance where the Court finds that a party flagrantly ignored the orders of the Court or the PC, the Court will impose sanctions.

Appellant's App. Vol. II at 48.

[16] Mother's argument that the trial court erred does not challenge the factual basis for the above findings. Rather, she simply asserts that *any* restriction on her right to file a motion for modification is *per se* contrary to law. Mother is incorrect. And, insofar as Mother asserts that the trial court improperly delegated its judicial power by requiring the parties to first try to resolve their disputes out of court with the PC, Mother's argument is not supported by cogent reasoning, and we do not consider it. App. R. 46(A)(8)(a).

## Conclusion

[17] In sum, we affirm the trial court's denial of Mother's motion to modify custody.

[18] Affirmed.

Kirsch, J., and Brown, J., concur.