**Julie WILSON, Appellant–Respondent,**

**v.**

**Larry L. WILSON, Appellee–Petitioner.**

**No. 79A02–9906–CV–414.**

Court of Appeals of Indiana.

Sept. 21, 1999.

Ann G. Davi, Holder Davis & Smith, Lafayette, Indiana, Attorney for Appellant.

Mary A. Russell, Hanna & Gerde, Lafayette, Indiana, Attorney for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Julie Wilson appeals the trial court's order in her child custody and support modification action against Larry Wilson.

We affirm in part and reverse in part.

### ISSUES

I.  Whether the trial court erred in striking a provision from the parties' property settlement agreement.

II. Whether the trial court erred in granting Larry's request to provide work-related child care for the parties' son.[1]

### FACTS

Larry and Julie Wilson's marriage was dissolved in 1993. The dissolution decree incorporated a property settlement agreement which included the following provision:

> The Husband and Wife shall have joint legal custody of the minor child of the parties, to-wit: Wesley P. Wilson, born March 20, 1990, and the Wife shall have physical custody of said minor child and shall have the right to make the normal religious and medical decisions of a cus-

---

1. Work-related child care is child care incurred due to the employment of either parent. Ind. Child Support Guideline 3(E).

Here, Larry requested to provide child care for the parties' son while Julie is at work.

todial parent and the Husband shall have the right of visitation.

Larry's Brief, p. 2.[2]

Julie's counsel explained that this provision was included in the agreement because Julie "had some hesitancy about joint custody, she was afraid that it wouldn't work because she realized that there would be a religious dispute and in order to avoid that problem we included a provision which said that she was expressly to have the right to make normal religious and medical decisions of a custodial parent."[3] (R. 45).

On July 16, 1998, Julie filed a petition to modify child custody and support wherein she alleged that joint legal custody was no longer working between the parties and was no longer in Wesley's best interests because of conflicts that had arisen between Julie and Larry regarding religion and medical care. She also asked the court to increase Larry's child support payments.

At the hearing on the petition, the parties' counsels summarized the parties' respective cases. Specifically, as to the child custody issues (religious and medical), Julie's counsel explained that Larry has been taking Wesley to Jehovah's Witnesses meetings and on door to door solicitations. Julie does not want Wesley participating in Jehovah's Witnesses activities. Her counsel explained as follows:

> My client, I think would testify that she is not comfortable with the child going to Jehovah's Witnesses meetings for a number of reasons. She feels that Jehovah's Witnesses is a kind of cult, that it does not encourage tolerance of people, that the child comes home very critical of her and many other people when he has been with his father and has gone to these meetings and that it is having a negative effect on the child.... The

> child comes home saying things like, church is bad, and when mother tries to tell him that's not appropriate, that church is not a bad thing, he argues and appears to be very confused about these things.... The former wife would testify that since ... [Wesley has] been attending the Jehovah's Witnesses meetings that she observes him in ... increased conflict and confusion and distress.

(R. 45–46, 49).

When Julie expressed her concerns to Larry, reminded him about the provision in their settlement agreement and asked him not to take their son to Jehovah's Witnesses meetings, Larry responded that the provision "didn't mean anything." (R. 45). Julie's counsel explained to the court that if Larry "would respect that provision in the decree, probably joint custody would be all right." (R. 47). Julie's counsel further explained that Julie was concerned when Wesley needed a tonsillectomy, and Larry attempted to tell the doctor that he would not consent to a blood transfusion because of his religious beliefs.

Larry's counsel responded that a "more likely source of [Wesley's] distress and source of conflict would be the fact that he's having some problems in school." (R.51). The Guardian Ad Litem recommended no change in Wesley's custody. She also recommended that the court permit Larry to take Wesley to religious meetings when they occur during Wesley's visitation. She acknowledged that her recommendation did not "speak to the law of the settlement agreement or the law of a custodial parent's rights." (R. 54).

As to child support, Julie's counsel explained that Larry currently pays $50.00 per week in child support. She asked the court to increase the support to $76.41 per week pursuant to the child support guide-

---

2. Although the dissolution decree is not included in the record, the parties do not dispute that the decree includes the quoted provision.

3. Apparently, Larry was not actively attending Jehovah's Witnesses meetings at the time of the divorce.

lines. Counsel further explained that Julie pays $65.00 per week for Wesley's work-related child care. Larry's counsel asked the court to permit Larry, who is on disability, to provide Wesley's work-related child care. Julie responded that it was not appropriate for Larry to provide child care because he has had heart surgery and "may not have the stamina to keep up with [Wesley]." (R. 44). Larry explained that the surgery took place more than 10 years ago and that his health has been very stable. He recently helped construct the new Jehovah's Witnesses Kingdom Hall.

As to child custody, the trial court issued an order which provides in pertinent part as follows:

> That portion of the decree relative to religious preference is stricken from the settlement agreement. The mother shall continue to make decisions with regard to medical treatment for the minor child.
>
> The father is entitled to attend religious services with the child during his visitation period. . . .
>
> In all other respects the Settlement Agreement and custody remain the same. Wesley shall remain in the joint custody of the parties.

(R. 33–34). According to the trial court, active involvement "in some religion is generally better than none." (R. 57).

As to child support, pursuant to the Tippecanoe County Visitation and Access Guidelines, the trial court granted Larry's request to provide Wesley's work-related child care. The court also denied Julie's request to modify Larry's child support payments. The court explained its decision as follows to Julie:

> [I]f I re-calculate the support based on the same income figures that you used, but take out the sixty-five dollars . . . we don't end up with a change which would justify modification of support from fifty dollars a week. We don't have a change — big enough change to modify it, so it'll have to stay at fifty dollars a week,

but you don't have to pay the sixty-five either. So, in that way, you get in some respects more of a financial break than you came in here asking for.

(R. 60).

## DECISION

### I. Religious Meetings

Julie first argues that the trial court erred in "striking the provision in the parties' property settlement agreement pertaining to religious decisions." Julie's Brief, p. 1. We agree.

Ind.Code § 31–15–2–17 provides in pertinent part as follows:

> (a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for: . . .
>
> > (3) the custody and support of the children of the parties.
>
> (b) In an action for dissolution of marriage:
>
> > (1) the terms of the agreement, if approved by the court, shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms. . . .

Indiana law " 'expressly encourages' " divorcing spouses to reach such agreements. _Mundon v. Mundon_, 703 N.E.2d 1130, 1134 (Ind.Ct.App.1999)(quoting _Kizziah v. Kizziah_, 651 N.E.2d 297, 298 (Ind.Ct.App.1995)). It is well-settled that divorcing spouses have more flexibility in crafting their own property settlement agreements than do divorce courts. _Mundon_ at 1134. Parties may agree to provisions which a trial court could not order. _Id._ A property settlement agreement which is merged and incorporated into a divorce decree is a binding contract. _Id._ A trial court should not interfere with a property settlement agreement provision for child custody and support unless the agreement, even where less than ideal, is clearly against the best interests of the

child. *Keen v. Keen,* 629 N.E.2d 938, 943 (Ind.Ct.App.1994).

■ Here, our review of the record reveals that, at the time of the dissolution, Julie anticipated conflict with Larry over Wesley's religious training because of Larry's previous involvement in the Jehovah's Witnesses. Because of her concern, Julie had some reservations about a joint custody arrangement. Therefore, she requested a provision in the property settlement agreement giving her the authority to determine the religious decisions as to Wesley. There is no evidence that Larry objected to the custodial provision providing Julie with the right to make the normal religious and medical decisions for the minor child. As a result, this provision was incorporated into the parties' final dissolution decree.

Against the wishes of the mother, Larry subsequently began taking Wesley to Jehovah's Witnesses meetings and on door to door solicitations. The evidence is unrefuted that after attending such meetings, Wesley became very critical of his mother. Wesley also demonstrated confusion and distress about religion. Specifically, Julie's counsel explained as follows: "The child comes home saying things like, church is bad, and when mother tries to tell him that's not appropriate, that church is not a bad thing, he argues and appears to be very confused about these things." (R. 46). Wesley has also been having problems at school. Julie expressed her concerns to Larry, reminded him about the provision in their settlement agreement and asked him not to take their son to Jehovah's Witnesses meetings. Larry responded that the provision "didn't mean anything." (R. 45).

Julie subsequently filed a petition to modify custody wherein she alleged that joint custody was no longer working between the parties and was no longer in Wesley's best interests because of the conflicts that had arisen between her and Larry regarding Wesley's religion and medical care. After a hearing, the trial court found that active involvement "in some religion is generally better than none," (R. 57), and struck the provision giving Julie the authority to make the religious decisions concerning Wesley. However, the trial court made no finding that the parties' agreement was clearly against Wesley's best interests. Further, our review of the record reveals no evidence that the agreement is in fact against his best interests. Under these circumstances, we agree with Julie that the trial court erred in striking the religious provision from the parties' agreement.

## II. *Child Care*

Julie further argues that the trial court "abused its discretion by ignoring [her] choice of child care arrangements for the minor child and ordering instead that the non-custodial parent be responsible for the work-related child care." Julie's Brief, p. 9. We disagree.

As the trial court explained to Julie at the hearing, Tippecanoe County judges have adopted the Tippecanoe County Visitation and Access Guidelines which provide in pertinent part as follows:

*CHILDCARE:*

The court believes it is preferable for children to spend time with their parents rather than placed in childcare or with a babysitter. If the custodial parent elects to place a child with a care giver, the non-custodial parent shall have the option to take possession of the child for such period of time that the child would have been with the care giver and the custodial parent's need for childcare ends.

Larry's Brief, p. 11. Here, the trial court granted Larry's request to provide work-related child care pursuant to these local guidelines.

■ Trial courts have the authority to adopt local rules so long as they are not inconsistent with any rule or statute promulgated by our supreme court. *Gorman v. Zeigler,* 690 N.E.2d 729, 730 (Ind.Ct.

App.1998); Ind.Code § 34–5–2–2; Ind. Trial Rule 81(A). Julie has not alleged that the Tippecanoe County Guideline as to child care is inconsistent with any supreme court rule or statute. Under these circumstances, we cannot say that the trial court erred in following the county guidelines and granting Larry's request to provide Wesley's work-related child care.

Further, Julie's argument that Larry is physically incapable of caring for Wesley is not supported by the record. Rather, our review of the evidence before the trial court reveals that Larry's heart surgery occurred more than ten years ago and his health has been very stable since that time. He recently helped to construct the Jehovah's Witnesses Kingdom Hall. We find no error here.

Affirmed in part and reversed in part.

KIRSCH, J., and BROOK, J., concur.