**Valerie COX, Appellant–Petitioner,**

v.

**Michael COX, Appellee–Respondent.**

No. 15A04–0410–CV–561.

Court of Appeals of Indiana.

Sept. 8, 2005.

Darlene J. Briscoe, Marianne J. Conrad, John E. Brengle, Indiana Legal Services, Inc., New Albany, IN, for Appellant.

Steven Sams, Indianapolis, IN, for Appellee.

## OPINION

SHARPNACK, Judge.

Valerie Cox appeals the trial court's grant of a petition for modification of a dissolution decree filed by her former husband, Michael Cox. Valerie raises two issues, which we consolidate and restate as whether the trial court's modification of the terms of the dissolution decree pertaining to maintenance was clearly erroneous. We reverse and remand.

The relevant facts follow. On October 18, 2000, the trial court entered a Summary Decree of Dissolution and made the parties' property settlement agreement part of the decree by reference. The property settlement agreement divided the parties' assets and debts, resolved issues concerning custody and child support, and provided:

\* \* \* \* \* \*

### V. SPOUSAL MAINTENANCE

Michael Cox shall pay to Valerie Cox the sum of $1,938 per month for spousal maintenance regardless of her cohabitation with another person. Valerie Cox is also retaining a stock interest in Cox Investments. In the event that Cox Investments pays a dividend, the following year the spousal support will be reduced by one-half of the interest of the dividend and it will be reduced by equal monthly installments of the amount during the year. Said maintenance shall continue for the remainder of Valerie's life.

\* \* \* \* \* \*

### XV. WAIVER AND MODIFICATION

No modification or waiver of any of the terms hereof shall be valid unless in writing and signed by both the parties. No waiver of any breach hereof or default hereunder shall be deemed a waiv-

er of any subsequent breach or default of the same or similar nature.

Appellant's Appendix at 12, 14.

On September 20, 2002, Michael filed a petition to modify the dissolution decree. In the petition, Michael alleged that he lost his job in December 2001, that he had filed for bankruptcy, and that he could no longer afford to pay the maintenance. Michael requested that the trial court modify the dissolution decree to terminate his obligation to pay maintenance. Valerie objected to the petition to modify the decree and filed a motion to dismiss, and the trial court held a hearing at which the parties presented arguments but no evidence. Michael argued that he should be excused from paying the maintenance because of "impossibility of performance." Transcript at 12. Valerie argued that, under *Voigt v. Voigt*, 670 N.E.2d 1271 (Ind.1996), the trial court did not have authority to modify the maintenance provision. The trial court entered the following findings of fact and conclusions thereon:

\*　　\*　　\*　　\*　　\*　　\*

1. The marriage of the parties was dissolved by summary decree of dissolution dated October 19, 2000; such decree approved the parties' agreement regarding division of marital property, assets, debts, custody and child support filed October 18, 2000.

2. At issue is Paragraph 5 of the October 18, 2000, agreement which provides: "Michael Cox shall pay to Valerie Cox the sum of One Thousand Nine Hundred Thirty-eight Dollars ($1,938) per month for spousal maintenance regardless of her cohabitation with another person .... Said maintenance shall continue for the remainder of Valerie's life."

3. I.C. 31–15–7–2 sets forth circumstances under which a court may award maintenance, as follows:

   a. Physical or mental incapacity affecting the ability of the incapacitated spouse to support himself or herself;

   b. Insufficient property apportioned to a spouse to provide for the spouse's needs and the spouse is the custodian of a child with physical or mental incapacity requiring the custodian to forego employment;

   c. Rehabilitative maintenance, not to exceed three years.

4. The Court notes that [Michael] was not represented by counsel in the dissolution of marriage proceedings.

From the foregoing, the Court concludes that the spousal maintenance provision of the October 18, 2000, agreement, not being in compliance with I.C. 31–15–7–2, is voidable, and [Michael's] petition to modify should be granted, and [Michael] is hereby granted relief from the requirement of paying [Valerie] the sum of One Thousand Nine Hundred Thirty-eight Dollars per month for life.

Appellant's Appendix at 6–7. Valerie filed a motion to correct error and alleged that the trial court's order violated *Voigt*, but the trial court denied Valerie's motion to correct error.

The sole issue is whether the trial court's modification of the terms of the dissolution decree pertaining to maintenance was clearly erroneous. It appears from the record presented to us that the trial court entered sua sponte findings of fact and conclusions thereon. Sua sponte findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id.* When a

court has made special findings of fact, we review sufficiency of the evidence using a two-step process. *Id.* First, we must determine whether the evidence supports the trial court's findings of fact. *Id.* Second, we must determine whether those findings of fact support the trial court's conclusions of law. *Id.*

Findings will only be set aside if they are clearly erroneous. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.*

Valerie argues that the trial court's judgment is clearly erroneous because it failed to follow the Indiana Supreme Court's opinion in *Voigt,* 670 N.E.2d at 1272. In *Voigt,* the parties negotiated a settlement agreement, which included a provision requiring the husband · to pay $400.00 per week to the wife as maintenance until she died, remarried, ·or reached age 65. *Id.* The settlement agreement also provided that "[a] modification . . . of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement." *Id.* The trial court then incorporated the settlement agreement into the dissolution decree. *Id.* at 1273. Despite the agreement, the husband failed to pay the maintenance and, a few months later, petitioned to modify the maintenance provision. *Id.* The husband argued that a "material change" in his "financial circumstances" made it "impossible and unreasonable" for him to make the promised payments. *Id.* The wife filed a motion to dismiss, which the trial court granted. *Id.*

On appeal, the Indiana Supreme Court distinguished between court-imposed maintenance and maintenance agreements. The Court noted that in ordering maintenance, a trial court "is restricted to three, quite limited options." *Id.* at 1276.

First, it may grant incapacity maintenance if it "finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself is materially affected." Ind.Code Ann. § 31–1–11.5–11(e)(1) [repealed by Pub.L. No. 1–1997, § 157 (eff. July 1, 1997), *see now* Ind. Code § 31–15–7–2(1) ]. Second, a court may order caregiver maintenance if it finds that a spouse must forego employment in order to care for a child with a physical or mental incapacity. *Id.* § 31–1–11.5–11(e)(2) [repealed by Pub.L. No. 1–1997, § 157 (eff. July 1, 1997), *see now* Ind.Code § 31–15–7–2(2) ]. Third, a court may order rehabilitative maintenance for no more than three years if it finds that a spouse needs support while acquiring sufficient education or training to get an appropriate job. *Id.* § 31–1–11.5–11(e)(3) [repealed by Pub.L. No. 1–1997, § 157 (eff. July 1, 1997), *see now* Ind.Code § 31–15–7–2(3) ].

*Id.* at 1276–1277. However, where none of these circumstances exist, a court may not order maintenance without the agreement of the parties. *Id.* at 1277.

On the other hand, in discussing maintenance agreements, the Court noted that "[w]hile a court itself may award maintenance only under the narrow circumstances outlined in § 11(e) [see now Ind. Code § 31–15–7–2(3)], the parties are not so limited in drafting settlement agreements." *Id.* Rather, the "parties are free 'to make such continuing financial arrangements as, in a spirit of amicability and conciliation, they wish.'" *Id.* (quoting *Hull v. Hull,* 436 N.E.2d 841, 843 (Ind.Ct.

App.1982)). "Put simply, the parties to a maintenance agreement are both grown-ups, free to bargain with their own legal rights." *Id.* at 1274. In reviewing such a settlement agreement, "a court should concern itself only with fraud, duress, and other imperfections of consent, ... or with manifest inequities, particularly those deriving from great disparities in bargaining power." *Id.* at 1278.

As for subsequent modification of maintenance, the Court again noted that court-imposed maintenance and maintenance agreements were treated differently. Court-imposed maintenance was subject to modification under the statutory requirements of Ind.Code § 31–1–11.5–17(a) (repealed by Pub.L. No. 1–1997, § (eff. July 1, 1997), *see now* Ind.Code § 31–15–7–3 [1]). *Id.* As for maintenance agreements, the Court held that "[w]here a court had no authority to impose the kind of maintenance award that the parties forged in a settlement agreement, the court cannot subsequently modify the maintenance obligation without the consent of the parties." *Id.* at 1279–1280. "In essence, the parties must agree to amend their settlement agreement, because the sole authority for the maintenance obligation originally derived from their mutual assent." *Id.* at 1280. Thus, the Court held that "a court has no statutory authority to grant a contested petition to modify a maintenance obligation that arises under a previously approved settlement agreement if the court *alone* could not initially have imposed an identical obligation had the parties never voluntarily agreed to it." *Id.* However, the Court reserved the question of "whether a court may modify a maintenance obligation that originated in a settlement agreement but that rested on a ground—incapacity, caregiving, or rehabilitation—on which the court could have ordered the same maintenance in the absence of agreement." [2] *Id.* at 1280 n. 13. Because our Supreme Court concluded that the trial court was not authorized to modify the maintenance provision of the Voigts' settlement agreement, the Court concluded that the trial court properly dismissed the husband's petition for modification. *Id.* at 1280.

■ Here, the trial court appears to have modified the agreement either because Michael was not represented by counsel at the time he signed the maintenance agreement or because the statutory requirements were not met for the trial court to order maintenance. Both parties concede that the record does not indicate that Valerie was incapacitated, caring for an incapacitated child, or in need of rehabilitative education. Thus, the trial court had no authority to impose the kind of maintenance award that the parties forged in the settlement agreement. However, the parties were free to agree to a mainte-

---

1. Ind.Code § 31–15–7–3 provides:
   Provisions of an order with respect to maintenance ordered under section 1 of this chapter (or IC 31–1–11.5–9(c) before its repeal) may be modified or revoked. Except as provided in IC 31–16–8–2, modification may be made only:
   (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
   (2) upon a showing that:
   (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
   (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

2. This court has since held in *Zan v. Zan,* 820 N.E.2d 1284, 1289 (Ind.Ct.App.2005), that a trial court could modify a maintenance agreement where the trial court could have ordered the rehabilitative maintenance in the absence of the agreement.

nance provision even though the requirements for court-ordered maintenance were not met. Thus, to the extent that the trial court modified the agreement because the statutory requirements were not met for the trial court to order maintenance, the trial court erred.

Further, the fact that Michael was not represented by counsel at the time he signed the maintenance agreement is not a basis for modification of the maintenance agreement. On appeal, Michael argues that the maintenance agreement should be modified because he was not represented in the dissolution proceedings, his performance of the maintenance agreement was impossible, and the agreement was unconscionable. However, in *Voigt,* the Court was reviewing a husband's proposed modification of a maintenance agreement over the wife's objection and the trial court's grant of a motion to dismiss the husband's petition for modifi-

cation. The Court held that modification of the maintenance agreement was not permitted despite the husband's allegations in the petition that a "material change" in his "financial circumstances" made it "impossible and unreasonable" for him to pay the maintenance and that the trial court properly granted the motion to dismiss.[3] *Id.* at 1273, 1280.

Similarly, here, Michael was not requesting that the trial court review an original settlement agreement or a modification of the agreement by consent of both parties. Michael is requesting a modification of the maintenance provision over Valerie's objection based upon his lack of counsel during the dissolution proceedings, impossibility of performance, and unconscionability. Under *Voigt,* Michael's arguments that he was not represented in the dissolution proceedings, that his performance of the maintenance agreement was impossible, and that the agreement was

---

3. In *Voigt,* our Supreme Court noted that the trial court is not required to approve a settlement agreement containing a provision for maintenance even though both parties agree to the provision. However, "[i]n reviewing a settlement agreement, a court should concern itself only with fraud, duress, and other imperfections of consent, ... or with manifest inequities, particularly those deriving from great disparities in bargaining power." *Voigt,* 670 N.E.2d at 1278. Further, "[i]n approving or rejecting any submitted modification agreement, a court should apply the same standard it would use in evaluating an initial settlement agreement." *Id.* at 1280. The Court made clear that this standard applies only to the trial court's review of the initial agreement and any subsequent modifications by the consent of the parties and does not apply to the review of a proposed modification of a maintenance agreement over the objection of one party.

Although under *Voigt,* it appears that maintenance agreements like the one at issue here cannot be modified under any circumstances without the consent of the parties, we note that, in general, a court may modify a proper-

ty settlement that is incorporated into a final divorce decree in the case of fraud, duress, or undue influence. *Adler v. Adler,* 713 N.E.2d 348, 354 (Ind.Ct.App.1999); Ind.Code § 31–15–2–7(c); Ind.Code § 31–15–7–9.1. The maintenance agreement here was part of the property settlement agreement, and it would seem that, as part of the property settlement agreement, the maintenance agreement could be revoked or modified based upon fraud, duress, or undue influence. Moreover, in *Voigt,* our Supreme Court emphasized the parties' freedom of contract in entering into a maintenance agreement. *Voigt,* 670 N.E.2d at 1278. Generally, defenses are available in a breach of contract action, such as waiver, estoppel, subsequent written or oral modification, compromise, settlement, accord and satisfaction, and impossibility of performance. *Miller v. Geels,* 643 N.E.2d 922, 930 (Ind.Ct. App.1994), *trans. denied.* However, we follow our Supreme Court's holding in *Voigt* that the trial court has no authority to modify such maintenance agreements without the consent of the parties. *See also Haville v. Haville,* 825 N.E.2d 375 (Ind.2005) (holding that the trial court had no authority to modify the parties' maintenance agreement).

unconscionable are not a basis for modifying a maintenance agreement.[4]

■ Because, based upon *Voigt,* the trial court had no authority to order such maintenance in the absence of the parties' agreement, the trial court had no statutory authority to grant a petition to modify the maintenance obligation without the consent of the parties. Valerie did not consent to the modification, and, thus, the trial court had no authority to grant Michael's petition to modify the maintenance agreement, and the trial court should have granted Valerie's motion to dismiss. The trial court's judgment granting Michael's petition to modify the maintenance agreement is clearly erroneous. *See, e.g., Voigt,* 670 N.E.2d at 1280; *Thomas v. Abel,* 688 N.E.2d 197, 201 (Ind.Ct.App.1997) (holding that the trial court should have dismissed the husband's petition for modification of a maintenance agreement because the trial court lacked the authority to modify the settlement agreement and terminate the husband's maintenance obligation), *reh'g denied.*

For the foregoing reasons, we reverse the trial court's judgment granting Michael's petition for modification and remand with instructions to grant Valerie's motion to dismiss.

Reversed and remanded.

VAIDIK, J. and MAY, J. concur.

---

4. Moreover, even if these arguments were a basis for modifying the maintenance agreement, Michael presented no evidence at the hearing. Although the chronological case summary appears to support Michael's assertion that he was not represented by counsel at the time of the dissolution, there is no evidence in the record to support his argument that his performance of the maintenance agreement was impossible or unconscionable.