**Tina Marie DEWBREW, Appellant–Respondent,**

v.

**Herbert A. DEWBREW, Appellee–Petitioner.**

**No. 41A04–0510–CV–602.**

Court of Appeals of Indiana.

June 20, 2006.

Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clark, P.C., Indianapolis, IN, Attorney for Appellant.

Deanne A. Dean–Webster, Robert W. Wright, Dean–Webster & Wright, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Tina Marie Dewbrew (Tina), appeals the trial court's Findings of Fact and Conclusions of Law denying her Motion to Correct Error Or In The Alternative Set Aside Property Settlement And Custody Agreement.

We reverse and remand with instructions.

### ISSUES

Tina raises two issues on appeal which we restate as follows:

(1) Whether the trial court erred by refusing to set aside a property settlement and custody agreement which did not include a provision for child support because the parties had agreed there was no need for it; and

(2) Whether the trial court erred by refusing to set aside a property settlement and custody agreement on the basis of "manifest inequity."

### FACTS AND PROCEDURAL HISTORY

Tina and Appellee–Petitioner, Herbert A. Dewbrew (Herbert), were married on January 13, 1990. During their marriage, two daughters were born: B.D., born on January 22, 1991 and C.D., born on August 26, 1996. The parties contemplated a divorce in 2003 and, at that time, they discussed the assets, liabilities, and relative worth of the marital property, including their two businesses.

Tina and Herbert began discussing divorce again in January of 2004. On January 14, 2004, Herbert filed a petition for dissolution while both parties were still residing at the marital residence located on State Road 37 in Martinsville, Indiana. At Herbert's request, Carrie Miles (Miles), an attorney who had previously performed legal services for Herbert, drafted a divorce agreement. After meeting with both parties for approximately an hour to one and a half hours, Miles finalized the terms of the divorce agreement. On April 22, 2004, per Tina's request, Miles faxed a copy of the proposed settlement to attorney Jim MacAbee. Thereafter, in May 2004, Tina and Herbert visited Miles' office, at which time Tina first saw the proposed settlement. Even though she understood it was Herbert's intention get the document signed that day, Tina felt the agreement to be unfair and refused to sign. Both parties returned to the marital residence where an argument ensued. No further discussions regarding the property settlement agreement occurred between the parties until several weeks later.

Sometime in the next few weeks, Tina discovered that Herbert was involved in an extramarital affair. Deciding that reconciliation was no longer possible, Tina scheduled an appointment with Miles. Accompanied by her mother, Tina returned to Miles' office where she spent approximately an hour and a half with Miles reviewing the provisions of the proposed settlement. Tina questioned Miles with regard to the monetary part of the agreement and requested changes to be made with regard to the residence she was to receive. After contacting Herbert and receiving his acceptance of Tina's requested changes, Miles modified the agreement accordingly. Miles advised Tina to have the agreement reviewed by her attorney. Tina left Miles' office without signing the document.

On or about July 6, 2004, Tina stopped by Miles' office and signed the proposed settlement agreement. That same day, the parties' Property Settlement and Custody Agreement was filed and approved by the trial court by merger of the agreement

into the Summary Decree of Dissolution. On August 4, 2004, Tina filed her Motion to Correct Error Or In The Alternative A Motion For Relief From Judgment. On June 15, 2005, the trial court heard evidence on Tina's motion. Thereafter, on August 11, 2005, the trial court entered findings of fact and conclusions of law *sua sponte*, denying Tina's motion.

Tina now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

When a trial court enters findings of fact and conclusions of law *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Scoleri v. Scoleri*, 766 N.E.2d 1211, 1215 (Ind. Ct.App.2002). In reviewing the judgment, this court must determine whether the evidence supports the findings and whether the findings, in turn, support the conclusion and judgment. *See id.* We will reverse a judgment only when it is shown to be clearly erroneous, "*i.e.,* when the judgment is unsupported by the findings of fact and conclusions entered on the findings." *Id.* For findings of fact to be clearly erroneous, the record must lack probative evidence or reasonable inferences from the evidence to support them. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Cox. v. Cox*, 833 N.E.2d 1077, 1080 (Ind.Ct. App.2005). In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.* In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. *Scoleri,* 766 N.E.2d at 1215. Finally, a general judgment may be affirmed on any theory supported by the evidence presented a trial. *Id.*

A party seeking to overturn her own property settlement agreement bears a substantial burden under Indiana law. To promote the amicable settlement of disputes that have arisen between the parties to a marriage attendant upon the dissolution of their marriage, Indiana Code section 31–15–2–17 provides that "the parties may agree in writing to provisions for the maintenance of either of them, the disposition of property, and the custody and support of their children." In drafting their own property settlement agreements, divorcing spouses have more flexibility than do divorce courts and may agree to provisions which a trial court could not order. *See Wilson v. Wilson,* 716 N.E.2d 486, 489 (Ind.Ct.App.1999). As here, a property agreement which is merged and incorporated into a divorce decree is a binding contract. *Id.* However, a court is not bound to accept every proffered settlement. *Pond v. Pond,* 700 N.E.2d 1130, 1136 (Ind.1998). "In reviewing a settlement agreement, a court should concern itself only with fraud, duress, and other imperfections of consent, or with manifest inequities, particularly those deriving from great disparities in bargaining power." *Id.* Nevertheless, the power to disapprove a settlement agreement must be exercised with great restraint. *Id.* Accordingly, a trial court should not reject such agreements just because it believes it could draft a better one. *Id.*

### II. *Child Support, and Alimony*

First, Tina contends that the trial court erred by failing to set aside a property settlement agreement which did not in-

clude a child support calculation pursuant to the Child Support Guidelines even though both parties testified at the hearing that they intended part of the alimony amount to be used for the support of the minor children.

In their Property Settlement and Custody Agreement, merged into the dissolution decree, the parties provided in Article III, Support of the Children and Exemptions, as follows: "1. *General Support:* As a result of the parenting time anticipated no support shall be paid by either party." (Appellant's App. p. 27). At the same time, Article IV, Settlement of Property and Debts, states in paragraph five:

> Husband agrees to make alimony payments to the wife as follows:
>
> 1. $3,000.00 per month starting the first day of the month in which wife moves into 1675 W. Foxcliff, and continuing for 5 years.
>
> 2. Starting in the [s]ixth year husband's payments to wife shall be reduced to $1,000.00 per month for [f]ive (5) years at which time said payments shall terminate.

(Appellant's App. p. 29).

At the motion's hearing, Herbert clarified that the alimony was in fact a combination of alimony and child support. He testified, in pertinent part, that:

> [HERBERT]: What we had talked about was that [Tina] would get a thousand dollars a month, and [B.D.] would get a thousand dollars a month, and [C.D.] would get a thousand dollars a month for the first five years, and that would give [Tina] time to get on her feet and get her schooling done and whatever she was going to do, and then the five years after that it would go down to a thousand dollars a month for [C.B.] . . .

> [COUNSEL]: And why would, why would it go down to a thousand dollars . . .
>
> [HERBERT]: Cause [B.D.] would be eighteen and on her own, and I'd already agreed to pay for all her schooling. And Tina would have, well she said what she was going to do was go back to night school and graduate from that, and then go to college. And then once again, once she got a boyfriend all that changed.

(Transcript p. 132).

Based on these facts before it, the trial court concluded:

> Failure to Provide for Child Support

> 12. The Indiana [s]upreme [c]ourt has held that child support is not an obligation which can be contradicted away. *Straub v. B.M.T.*, 645 N.E.2d 597 (Ind. 1994). In *Straub,* the court noted that:
>> We have treated custodial parents who receive child support as trustees of the payments of the use and benefit of the child. Neither parent has the right to contract away these support benefits. The right to the support lies exclusively with the child. Any agreement purporting to contract away these rights is directly contrary to this State's public policy of protecting the welfare of children, as it narrows the basis for support to one parent.

> 13. However, there are instances when support is not required. *See K.S. v. R.S.,* 669 N.E.2d 399, 406 (Ind.1996). In *K.S. v. R.S.,* the court upheld an agreement which provided for no support based on the anticipated parenting time of both parties. The same situation exists here. . . . Moreover, the agreement provides that [Herbert] is responsible for all uninsured medical, dental and orthodontia expenses, as well as all sports and activity fees.

14. Finally, the court finds credible [Herbert]'s explanation that a portion of the alimony payments were actually intended by the parties to be used by [Tina] for the children. The payments are arranged to be reduced from $3,000 to $2,000 five (5) years from the date of the agreement and then stopped completely five (5) years later. Those dates coincide with each of the couple's two children reaching the age of eighteen (18).

15. ... However, in this case the court was not asked to order support. [Tina] specifically agreed that due to the anticipated custody of the children, no support was necessary. Even if the duty to determine child support applies wherever there are children, the remedy here appears to be that the parties simply submit a worksheet for the [c]ourt to review if the parties desire to ask the [c]ourt to review the support [o]rder. Should the parenting time be other than expected at some point in the future, [Tina] may then petition the [c]ourt for an adjustment of child support.

(Appellant's App. pp. 51–52) (some internal quotations omitted).

Initially, we note that the trial court's Order contains contradictory conclusions. On the one hand, the trial court determined that the instant case did not require a calculation of child support because of the anticipated parenting time of both parties, while on the other hand, the trial court clearly stated that child support was nevertheless included in the settlement agreement because a portion of Tina's alimony payments were actually destined by the parties to be used for the benefit of the children. We disagree with Herbert's argument that although the trial court found credible Herbert's explanation that a portion of Tina's alimony payments "were actually intended by the parties to be used

by Tina for the children," it did not conclude that these payments were effectively child support. Herbert's argument amounts to nothing more than mere semantics: payments made by one party to another after a dissolution of marriage and which are destined for the use—or support—of minor children are properly characterized as child support.

Distilling Tina's contention to its bare bones, she is essentially requesting this court to modify the parties' property settlement agreement, which was accepted by the trial court in its dissolution decree. Even though Tina agreed to the settlement agreement, she now disputes its language and intent as it relates to support for the parties' two minor children. As we stated in *Dusenberry v. Dusenberry*, 625 N.E.2d 458, 461 (Ind.Ct.App.1993), "[a] strong policy favors the finality of marital property divisions, whether the court approves the terms of a settlement agreement reached by the parties ... or the court divides the property." Nevertheless, while Indiana courts have encouraged divorcing couples to resolve disputes amicably, they have also consistently distinguished property and maintenance agreements from agreements governing child support, custody, and visitation. In *Voigt v. Voigt*, 670 N.E.2d 1271, 1278 n. 10 (Ind. 1996), our supreme court noted that principles of freedom of contract governing property settlements between divorcing parties "of course ... cannot apply to the child custody and support provisions of proffered settlement agreements. If there is one overriding policy concern in dissolution actions, it is protecting the welfare and interests of children."

Pursuing the best interests of B.D. and C.B., Tina argues that alimony and child support payments trigger different tax consequences. As a recipient of alimony payments, Tina maintains that she must

include the entire amount in the calculation of her gross income where they are taxed under the prevalent tax bracket. However, child support payments, if sufficiently identifiable, are not taxable. Accordingly, Tina asserts that by not separating out her alimony payment from the child support, the minor children's support payments are diminished by the payment of taxes.

### A. Alimony as Spousal Maintenance or Property Settlement

■■■ In determining whether the incorporation of child support in Tina's alimony payment is against the best interests of the children, we first need to establish whether the alimony, stipulated in the parties' property settlement agreement, connotes spousal maintenance or a property settlement as they involve different tax treatments. However, in the instant case, alimony belies an interpretation which equates the term with spousal maintenance.

Relying on our decision in *Legge v. Legge*, 618 N.E.2d 50, 50–51 (Ind.Ct.App. 1993), we defined an alimony provision in *DeBoer v. DeBoer*, 669 N.E.2d 415, 421 (Ind.Ct.App.1996), *trans. denied,* as constituting spousal maintenance where the settlement agreement unambiguously provided definite terms as to the amount, length, and manner of payment. Likewise here, the payments are clearly delineated with regard to amount and duration and are contingent upon the passage of a certain time period to decrease in amount paid. Accordingly, the term alimony as used by the parties actually dictates a finding that the payments are made for spousal maintenance support.

### B. Tax Consequences

■■■ As a general rule child support payments and spousal maintenance in divorces and judicial separations are treated differently in the Internal Revenue Code. An individual may deduct from his or her taxable income the payments he or she made during a taxable year if those payments are for spousal maintenance. I.R.C. § 215(a), *Kean v. Commissioner of Internal Revenue*, 407 F.3d 186, 189 (3d Cir. 2005). Consequently, the recipient of the payments must include the amounts when calculating his or her gross income. I.R.C. § 61(a)(8). On the other hand, where child support is specifically designated or fixed in the settlement agreement, the amount is not deductible by the payor spouse, nor taxable to the recipient. *See* I.R.C. § 71(b); *Abramo v. Commissioner of Internal Revenue*, 78 T.C. 154, 160, 1982 WL 11069 (U.S.Tax Ct.1982). In other words, since no taxes are withheld on the amount paid as child support, the entire sum can be used for the benefit of the child.

In the case before us, all parties testified that Herbert wanted to take care of his daughters and intended to support them. At the motion's hearing, Herbert himself testified that part of the payment characterized as spousal maintenance should go towards the support of the children. However, by neglecting to separately designate the child support and instead mingling it with the spousal maintenance payment, Herbert not only raises his deductible taxable amount but, at the same time, deprives his children from some financial support by making the support payments taxable. Accordingly, even though Herbert promised his children a certain support to maintain their lifestyle, at the end of the day, they receive less than they are due. Based on the difference in tax treatment between spousal maintenance payments and child support, we conclude that the inclusion of child support within the amount of spousal maintenance is against the welfare and interest of the children. *See Cox*, 833 N.E.2d at 1080. Consequently, we are left with a clear conviction that

the trial court made a mistake by refusing to set aside the parties' property settlement and custody agreement with regard to the child support payments. *Id.* Therefore, we remand to the trial court with the instruction to distinguish the child support from the spousal maintenance and calculate the appropriate amount of support in accordance with the child support guidelines.

### C. *Spousal Maintenance*

■ Even though we remand to the trial court with instructions to calculate the appropriate child support, our review does not end there. Because the parties mingled the child support payments with the amount allocated as spousal maintenance, our decision today necessarily implies a modification of the spousal maintenance—or alimony—provision of the settlement agreement.

■ There are two ways in which a party to a divorce may be obligated to make spousal maintenance payments. A trial court may award only "three, quite limited" varieties of post-dissolution maintenance: spousal incapacity maintenance, caregiver maintenance, and rehabilitative maintenance. Ind.Code § 31–15–7–2. A court may order rehabilitative maintenance for no more than three years if it finds that a spouse needs support while acquiring sufficient education or training to get an appropriate job. I.C. § 31–15–7–2(3). Additionally, the parties may themselves provide for maintenance in settlement agreements where the court could not otherwise order it. *Voigt,* 670 N.E.2d at 1277.

However, in its seminal opinion on spousal maintenance, our supreme court in *Voigt,* held with regard to modification of spousal maintenance provisions that:

> Where a court has no authority to impose the kind of maintenance award that the parties forged in a settlement agreement, the court cannot subsequently modify the maintenance obligation without the consent of the parties. In essence, the parties must agree to amend their settlement agreement, because the sole authority for the maintenance obligation originally derived from their mutual assent. In approving or rejecting any submitted modification agreement, a court should apply the same standard it would use in evaluating an initial settlement.

*Id.* at 1280. Thus, while the *Voigt* court concluded that a court cannot modify a maintenance obligation that arises under a previously approved settlement agreement if the court *alone* could not initially have imposed an identical obligation had the parties never voluntarily agreed to it, at the same time, the supreme court expressly reserved the question of whether a court may modify a maintenance obligation that originated in a settlement agreement but that rested on a ground on which the court could have ordered the same maintenance in the absence of an agreement. *Id.* at 1280 n. 13.

Precisely this reserved issue was before us and decided affirmatively in *Zan v. Zan,* 820 N.E.2d 1284 (Ind.Ct.App.2005).[1] In *Zan,* the parties agreed that the husband would make rehabilitative maintenance payments to the wife due to the fact that she had not worked continuously throughout the marriage and needed assistance in obtaining an education to better her employment opportunities. *Id.* at

---

1. Even though the supreme court acknowledged that the issue in *Haville v. Haville,* 825 N.E.2d 375, 377 (2005), appeared to fall within the question reserved in *Voigt,* our supreme court nevertheless, based on the facts presented in *Haville,* decided *Haville* within the guidelines set forth in *Voigt.*

1288. In reviewing the facts, we determined that the trial court would have had the authority, pursuant to I.C. § 31–15–7–2(3), to order husband to make such rehabilitative maintenance payments without the agreement of the parties. *Id.* Under these circumstances, we held that a trial court may modify the settlement agreement. *Id.* at 1289. As we stated, "to hold otherwise may circumvent the parties' ability or desire to bargain independently without court intervention." *Id.*

Here, Herbert's testimony revealed that Tina's intended spousal maintenance payment was designed as rehabilitative maintenance. Specifically, Herbert stated at the hearing that the payments would give Tina time to get on her feet and get her schooling done. Furthermore, our review of the record reveals that Tina left school after finishing the tenth grade and unsuccessfully tried to complete her education three times. During the marriage, Tina remained at home and cared for the children. Accordingly, based on these facts, the trial court, as in *Zan*, could have determined that Tina needed assistance to better her employment position and, thus would have had the authority, pursuant to I.C. § 31–15–7–2(3), to order Herbert to make such rehabilitative maintenance payments without the agreement of the parties. *Id.* Therefore, as the trial court, in the absence of the alimony provision in the settlement agreement, could have ordered spousal maintenance, it can adjust the spousal maintenance amount after separating and determining the child support on remand.

### III. *Division of Marital Property*

▮ Next, Tina contends that the trial court erred by refusing to set aside the property settlement because of manifest inequity. In particular, Tina asserts that the settlement agreement signed by both parties is manifestly inequitable because it failed to divide all significant marital assets, specifically, the marital residence and Herbert's two businesses.

▮ As we stated before, Indiana's public policy generally favors the freedom of contract between private parties. *Pond,* 700 N.E.2d at 1136. There is a very strong presumption of the enforceability of contracts that represent the freely bargained agreement of the parties. *Id.* Nevertheless, the court is not bound to accept every proffered settlement. *Voigt,* 670 N.E.2d at 1277. Although a divorce decree may be considered final, in case of ambiguity, we must interpret the decree as we do any other contract. *Myers v. Myers,* 560 N.E.2d 39, 44 (Ind.1990); *Beike v. Beike,* 805 N.E.2d 1265, 1268 (Ind. Ct.App.2004). Unlike the trial court, we find the parties' property settlement agreement to be clearly ambiguous.

In Article IV of the property settlement agreement, the "parties agree that the following property, whether real, personal, or mixed, held by [Herbert] and [Tina] as co-owners shall be divided." (Appellant's App. p. 28). In this regard, paragraph 1 provides:

> Marital Residence The residence located at 1675 West Foxcliff Drive, Martinsville, IN 46151 shall be the sole and separate property of [Tina], and [Herbert] shall execute a Quitclaim deed transferring his interest therein subject to [Tina] assuming and holding [Herbert] harmless from the mortgage indebtedness to Washington Mutual upon said real estate, [Herbert] also agrees to provide the following updates/repairs at his cost to the residence:
>
> 1. New carpet for Living Room, Family room, and Bedrooms.
>
> 2. New Tile in the master bathroom shower

3. New counter tops in master and ½ bathrooms.

As part of this agreement, [Herbert] also agrees that [Tina] can reside at the Old State Road 37 real estate until March 27, 2004. [Herbert] agrees to vacate by January 30, 2004.

(Appellant's App. p. 28). Our review of the evidence indicates that the Foxcliff Drive residence, designated by the property settlement agreement as having been the marital residence, is in fact the residence Tina received as part of the divorce settlement. At no time during the marriage, did Tina and Herbert ever share the Foxcliff Drive residence. On the other hand, the record establishes that the State Road 37 residence, mentioned almost as an afterthought in the property settlement agreement, was at all times during the marriage, the parties' marital residence.

As the scope of the property settlement agreement purports to settle "the respective rights of [Herbert] and [Tina] to property, both real and personal, now owned by them," we must agree with Tina that the agreement lacks a division of the most significant marital assets. (Appellant's App. p. 27). First, the property settlement agreement is silent as to the division of the marital residence on State Road 37. Especially in light of the fact that Herbert vacated the residence, we cannot reasonably infer that permitting Tina to stay temporarily at the residence, without anything more, automatically awards the residence to Herbert.

Furthermore, even though the record contains numerous references to Herbert's businesses which he appears to have acquired and managed during the marriage, the property settlement agreement does not expressly provide for their division between the parties. In fact, during the hearing, Herbert acknowledged that the property settlement agreement failed to dispose of the businesses. Accordingly, based on the property settlement's ambiguity, we reverse the trial court's refusal to set aside the property settlement agreement and remand with instruction for the trial court to divide all marital assets in accordance with the intent of the parties.

Moreover, even notwithstanding our conclusion that the property settlement agreement is ambiguous, we would nevertheless have remanded this case to the trial court for recalculation of the entire division of marital property based on our partial modification of the property settlement agreement in terms of child support and spousal maintenance. It is well established that a partial modification of a property settlement agreement will likely upset the division of property equation in the divorce decree. *Dusenberry v. Dusenberry*, 625 N.E.2d 458, 461 (Ind.Ct.App.1993). The adjustment of one asset or liability may require the adjustment of another to avoid an inequitable result or may require the reconsideration of the entire division of property. *Id.*

### CONCLUSION

Based on the foregoing, we find that the trial court erred in its refusal to set aside the property settlement and custody agreement.

Reversed and remanded with instructions.

DARDEN, J., concurs.

VAIDIK, J., dissents with separate opinion.

VAIDIK, Judge, dissenting.

I respectfully dissent. I would find that: (1) the alimony provision of the settlement agreement constitutes an agreement for spousal maintenance between the parties that is not subject to judicial modification;

(2) the provision excusing either party from the payment of child support is against public policy; and (3) the property division approved by the trial court is valid to the extent that it disposes of the property specified in the agreement, but that the trial court must also address the division of all marital property not included in the agreement.

The only provision in the settlement agreement addressing recurring monetary payments between the parties provides:

5. *Payments to Wife:* Husband agrees to make alimony payments to the wife as follows:

1. $3000.00 per month starting the first day of the month in which wife moves into 1675 W. Foxcliff, and continuing for 5 years.

2. Starting the sixth year husband's payments to wife shall be reduced to $1000.00 per month for Five (5) years, at which time said payments shall terminate.

Appellant's App. p. 29, Settlement Agreement Art. IV, par. 5. Under facts similar to this case, we held that "alimony" refers to spousal maintenance and, specifically, does not include child support. *See DeBoer v. DeBoer,* 669 N.E.2d 415, 421 (Ind.Ct.App. 1996), *trans. denied.* Moreover, the Dewbrews's settlement agreement also provides that "[a]s a result of the parenting time anticipated no support shall be paid by either party." Appellant's App. p. 27, Settlement Agreement Art. II, par. 1. The language in each of these clauses is clear

and unambiguous, and we should therefore enforce the agreement of the parties and require Herbert to pay spousal maintenance to Tina according to the terms of Article IV, Paragraph 5 of the settlement agreement. The trial court abused its discretion when it admitted parol evidence— Herbert's testimony that the parties intended the alimony provision to cover child support and spousal maintenance—to aid in its interpretation of the clear and unambiguous language of the provision. *See Allstate Ins. Co. v. Burns,* 837 N.E.2d 645, 651 (Ind.Ct.App.2005) (when terms of contract are clear and unambiguous, court will not construe contract or admit parol evidence). I cannot agree with the majority's decision because it relies on the same parol evidence when it remands this case and instructs the trial court to modify the amount of spousal maintenance upon determination of child support.

On a related note, I cannot agree that the spousal maintenance provided for under the agreement is rehabilitative, and therefore modifiable by our courts. Indiana courts have the authority to award, and therefore to modify, spousal maintenance only where the spouse receiving payments is incapacitated, provides care to an incapacitated child of the marriage, or qualifies for "rehabilitative" maintenance to gain job skills. Ind.Code § 31-15-7-2; *Zan v. Zan,* 820 N.E.2d 1284 (Ind. Ct.App.2005) (trial court may modify spousal maintenance agreements that it could have ordered pursuant to statute).[2]

---

2. The majority cites *Zan* to support its assertion that a court may modify the Dewbrews's maintenance agreement, but their reliance on *Zan* is misplaced. *Zan* concerned a settlement agreement that referred to the alimony provided therein as "Rehabilitative Maintenance," both in the heading preceding the clause of the settlement agreement setting forth the payment structure and in the clause itself. *See Zan v. Zan,* 820 N.E.2d 1284, 1286

(Ind.Ct.App.2005). Additionally, the clause provided for the payment of money for a period of three years, which is consistent with the statutory limitation on rehabilitative maintenance, and it included language providing that payments were being made "due to the fact that Mother has not worked continuously throughout the marriage and needs assistance in obtaining an education to better employment opportunities." *Id.* (quoting the

In the case of rehabilitative maintenance, the court may award maintenance payments for up to three years following dissolution. Ind.Code § 31–15–7–2(3)(D). Nothing in the Dewbrews's settlement agreement suggests that this spousal maintenance provision falls under any of the statutory categories of maintenance that a court may modify. Therefore, under the clear terms of the settlement agreement, Herbert should be ordered to pay this maintenance in the manner provided therein. Again, the trial court and the majority rely on Herbert's testimony in determining that the maintenance provided for under the settlement agreement is rehabilitative, yet neither cites to any ambiguity within the agreement that would justify the admission of parol evidence to address this issue. Absent an ambiguity, it is inappropriate to admit parol evidence to interpret a settlement agreement.

Next, I believe that child support was not ordered under the clear terms of the settlement agreement and therefore the child support provision is against public policy. We have previously held that "any agreement which purports to contract away a child's right to support is unenforceable as directly contrary to the public policy of protecting the welfare of the children." *Bussert v. Bussert*, 677 N.E.2d 68, 70 (Ind.Ct.App.1997), *trans. denied*. In its order, the trial court cited *K.S. v. R.S.*, 669 N.E.2d 399 (Ind.1996), in support of its determination that this agreement between the parties is permissible and does not constitute the contracting away of either party's child support obligation. In *K.S.*, a man who had a child with his married neighbor as the result of their extramarital affair established his paternity of the child, and he and the Mother entered into an agreement for equal parenting time that provided that neither party would pay support to the other. Our Supreme Court stated:

> Although not without some doubt, we do not believe that this agreement constitutes contracting away [the child]'s right to child support from a parent.... This agreement merely states that, at this time, there is no need for one parent to provide another parent with support payments.... We might also add, however, ... [that this child] will not be barred by *res judicata* from later challenging this agreement.

*Id.* at 406. Given the doubt expressed in our Supreme Court's opinion and the facts that the Dewbrew's have significantly disparate incomes and did not, in their settlement agreement, set forth any specific agreement regarding how much time each party would have physical custody of their children, I cannot agree with the trial court that K.S. controls our decision.

The comments to the Indiana Child Support Guidelines indicate that "Federal law now requires that the Indiana Child Support Guidelines be applied *in every instance* in which child support is established including, but not limited to, *dissolutions of marriage,....*" Ind. Child Support Guideline 2, Comment. In *Pryor v. Bostwick*, 818 N.E.2d 6 (Ind.Ct.App.2004), this Court reversed a child support agreement between the parents because neither parent submitted child support worksheets to justify the amount of support provided for in the agreement.[3] Because the trial

---

parties' settlement agreement). No parallel language exists in the settlement agreement we review today, and therefore *Zan* fails to support the majority's determination.

**3.** The trial court noted the *Pryor* decision, but found that it was not required to make a determination of the appropriate support amount under the Child Support Guidelines because the Dewbrews's settlement agree-

court did not make any findings nor complete a child support worksheet itself in order to justify its order, we reversed and remanded for a calculation of child support pursuant to the Child Support Guidelines. The same reasoning applies here: because neither party submitted child support worksheets and because the trial court did not itself complete a worksheet or adequately justify its order in its findings, we are unable to determine whether the agreement deviates from the Child Support Guidelines or whether the deviation, if there is one, is justifiable. Therefore, the trial court should be instructed to either receive child support worksheets from the parties or to complete a worksheet itself and, if its order reflects a deviation from the support amount determined under the worksheet, it should likewise reflect sound reasoning for that deviation.

Finally, I would find that the clause providing for the division of all personal property not specifically addressed in the agreement is insufficient to address the couple's $1 million-plus business assets, and remand is needed to remedy this. However, to the extent that it specifically provides for the division of the property listed, the agreement is valid, albeit incomplete; I therefore disagree with the majority's decision inasmuch as it reverses the property division that *is* already accounted for in the settlement agreement. I would affirm the trial court's decision to uphold those portions of the settlement agreement and remand the case for the division of all other property, including business assets. In my view, the only provision of the agreement that may be affected by such a

decision is the clause wherein Herbert agrees to accept all of the marital debt. On remand, the trial court should take into account both the assets and liabilities of the couple and their businesses in determining an appropriate division of property. In addition, because I find the alimony provision to be fully binding on Herbert, the trial court should consider the alimony payments in arriving at an equitable distribution of marital property.

To reiterate, I find the alimony provision to constitute an agreement of the parties not subject to judicial modification. Further, I regard the child support provision of the settlement agreement to be an impermissible contractual agreement dispensing with Herbert's child support obligation in conflict with the Child Support Guidelines. Finally, I find the property distribution provided for in the agreement to be valid, with the caveat that a more complete division is required and must take into consideration all of the property of the marriage, the liabilities attached to that property, and the maintenance provision of the agreement. For these reasons, I respectfully dissent.

---

ment did not directly *request* the trial court to rule on child support. *See* Appellant's App. p. 52, Order on Motion to Correct Error, Conclusion 15. I find this reasoning to be in direct conflict with the comment to Indiana Child Support Guideline 2, as stated above, which indicates that a trial court is *always* required to apply the Child Support Guidelines whether it is *asked* to or not. Besides, when a divorcing couple requests that a trial court approve its settlement agreement, it is axiomatic that the couple likewise asks that the court approve the child support provision contained in that agreement.